Abraham J. Gellinoee, J.
On the night of November 15, 1970 there was an accident involving the automobile operated by petitioner Robert Leopold, and the personal automobile of Patrolman Kalman Ungar, who was then off-duty. A conversation ensued — the substance of which is differently recalled by *4 the principals — after which Ungar placed Leopold under arrest on a charge of driving while intoxicated.
After petitioner had been removed to the station house, a friend, who had been the passenger in his car, called an attorney, John Jankoff, Esq., and requested counsel to represent petitioner. Jankoff then called the station house, about an hour after the arrest, and requested to speak to, or to be able to visit with, petitioner. ‘These requests were denied by the police.
Some 45 minutes after counsel’s unsuccessful call to the station house, a patrolman arrived with equipment to test the alcoholic content of petitioner’s blood by way of a breath test. He advised Leopold that refusal to take the test might result in the revocation of his driver’s license, and asked petitoner to submit to the test. Leopold refused to take the test without the presence of a witness.
As a result of these events, a hearing was held on May 10, 1971 before a Referee of the Department of Motor Vehicles. On the basis of Leopold’s refusal to submit to the test, the Referee revoked his license pursuant to section 1194 of the Vehicle and Traffic Law. Leopold has brought this article 78 proceeding, attempting to have that determination set aside. He argues that the findings of the Referee are ‘ ‘ contrary to the evidence ’ ’, that he was not sufficiently warned of the consequences of refusing to take the test, and that he was improperly deprived of the assistance of counsel.
Respondent replies on the merits only briefly in his answer by asserting that the determination ‘ ‘ was made according to the requirements of law.” Respondent’s principal contention is that since petitioner has raised the issue of the sufficiency of the evidence, the matter must be transferred by this court to the Appellate Division (CPLR 7803, subd. 4, 7804, subd. [g]).
This claim would be meritorious if the court were compelled to reach the two factual issues raised by petitioner/ However, even accepting all the Referee’s findings as supported — including the finding that Leopold did not request the presence of counsel, which is contrary to the explicit testimony of two defense witnesses and based solely upon the officer’s testimony that he “ can’t remember ” but “ do[es]n’t believe ” Leopold made such request — the legal issue raised by petitioner (CPLR 7803, subd. 3) is dispositive.
The testimony of Leopold’s attorney, as well as that of his passenger, that the attorney attempted to contact petitioner within two hours after the arrest and prior to the abortive chemical examination, was in no way refuted by .respondent at the hearing, and no contrary finding was made by the Referee. The *5 issue posed in this matter, then, is whether, as a matter of law, a driver’s license may be revoked solely on a finding of refusal to submit to a chemical test, when the refusal is made at a time when the driver’s attorney has been denied immediate access to him.
The courts of this State have long recognized that, “As a matter of fairness, government ought not compel individuals to make binding decisions concerning their legal rights in the enforced absence of counsel” (People v. Ianiello, 21 N Y 2d 418, 424 [1968]). Indeed, as early as 1963, long before the Supreme Court decisions on the rights of detainees to counsel at the station house, the New York Court of Appeals held that State law required ‘ ‘ the exclusion of a confession taken from a defendant, during a period of detention, after his attorney had requested and been denied access to him ” (People v. Donovan, 13 NY 2d 148, 151 [1963]).
The rationale of Donovan (supra) compels the conclusion here that the refusal by the police to permit petitioner’s counsel to speak with or to see him at a time when petitioner was in custody violated petitioner’s right to counsel. His subsequent uncounseled refusal to submit to the chemical examination could therefore not be used against him in the instant matter (see, People v. Gursey, 22 N Y 2d 224, 229 [1968]; People v. Craft, 28 N Y 2d 274, 278-279 [1971]).
The court is not unmindful that there is a difference between due process requirements in criminal prosecutions for intoxicated driving and administrative license revocation hearings (Matter of Finocchairo v. Kelly, 11 N Y 2d 58 [1962] [concurring opinion, Van Voorhis, J.]; Matter of Story v. Hults, 27 A D 2d 745, affd. 19 N Y 2d 936 [1967]). But that distinction is not determinative. In Finocchairo (supra) which the majority of the Court of Appeals affirmed without opinion, the petitioner had requested counsel at the station house, but had no attorney. To have granted his request would have mandated a protracted delay which would have negated the possibility of a meaningful chemical examination. In Story (supra), which both the Appellate Division and the Court of Appeals decided without opinion, the petitioner requested a lawyer, who did not appear at the station house until after the chemical test had been refused. Subsequently, in People v. Gursey (22 N Y 2d 224, 229, supra), the Court of Appeals indicated that it was the lateness of Story’s attorney’s appearance and the fact that the police permitted petitioner to call for an attorney that was determinative, apart from the fact that the case involved an administrative hearing, rather than a criminal trial. In neither case was there a clear violation of constitutional rights, and neither held that the *6 deprivation of the right to counsel would be countenanced when the fruits were utilized in an administrative proceeding.
The court is not heedless of the practical problems involved in the need for a prompt administration of the chemical test. To apply in a drunken driver police procedure the full panoply of the right to counsel inhering in a criminal case would create delays which could totally frustrate the salutary purpose of requiring chemical examinations of suspected intoxicated drivers.
The court therefore holds that where, as here, an attorney seeks to confer with his client, who is then in custody, and such conferring will not improperly delay the timely administering of the chemical examination, that right must be granted, or else a refusal to take such examination or the results of the examination may npt be utilized against the alleged drunken driver, either in a criminal proceeding, or in the quasi-criminal proceeding to revoke the driver’s license.
The determination of the Referee is vacated, and petitioner’s driver’s license reinstated.