# DANIEL W. PRIDEAUX v. STATE, DEPARTMENT OF PUBLIC SAFETY.

247 N. W. 2d 385.

October 8, 1976—No. 45862.

*Bruce C. Douglas,* for appellant.

*Warren Spannaus,* Attorney General, and *Craig R. Anderson,* Special Assistant Attorney General, for respondent.

KELLY, JUSTICE.

Appellant, Daniel W. Prideaux, appeals from the judgment of the district court sustaining the commissioner of public safety's revocation of his driver's license.[1] We reverse.

---

[1] Proceedings in the district court were pursuant to Minn. St. 169.123, subd. 7, which provides for district court hearing de novo of license revocation proceedings with right of jury trial.

At approximately 2:45 a. m. on the morning of January 24, 1974, appellant was stopped by a Hennepin County deputy sheriff who had observed appellant's car being driven in an erratic manner. Based on his observations before and after the stop, the officer arrested appellant for driving under the influence of an alcoholic beverage and placed him in the back of the squad car. Although the officer testified that he did not give appellant a Miranda warning,[2] appellant told the officer he wanted to consult an attorney. Appellant testified, "I just told him I wanted to see my attorney pronto." The officer testified as follows:

"Q. Now, Officer Voss, after you told Mr. Prideaux that he was under arrest and before you began reading the implied consent advisory, isn't it a fact that Mr. Prideaux made known to you his desire to communicate with an attorney?

"A. Yes.

"Q. And you knew that he wanted to talk to an attorney, correct?

"A. Yes.

"Q. Did you make any effort whatsoever to enable him to confer with an attorney?

"A. No.

＊　＊　＊　＊　＊

"Q. Did you tell him that you would get him to a phone where he could confer with an attorney?

"A. No.

"Q. In fact, you made absolutely no effort whatsoever to allow him to confer with his counsel, is that correct?

"A. That's correct."

---

[2] Appellant, on the contrary, testified that he had been given such a warning. The jury was properly instructed that if a Miranda warning was given and appellant was confused about his rights as a result, such confusion would be a reasonable ground to refuse the test. State, Dept. of Highways, v. Beckey, 291 Minn. 483, 192 N. W. 2d 441 (1971). The jury found that appellant did not have a reasonable ground to refuse the test.

Without making any attempt to permit appellant to confer with counsel, the officer proceeded to read to appellant the implied-consent advisory, which included a statement regarding appellant's rights and obligations under the Minnesota implied-consent law, Minn. St. 169.123, and an inquiry as to whether appellant would consent to chemical testing of his blood or breath. When asked whether he would consent to a chemical test, appellant stated, "You may talk to my attorney," and continued to assert a right to counsel in response to questions from the officer regarding the test. The officer made no attempt to allow appellant to call or confer with counsel, but interpreted appellant's remarks and course of conduct as a refusal to permit testing.

Testimony at trial established that appellant could have been permitted to call counsel at Methodist Hospital, the blood-testing station which would have been used, or at the sheriff's patrol office in Hopkins, the breath-testing station which would have been used. There was no testimony that the short delay, if any, in the administration of chemical tests occasioned by such a phone call would have in any way affected the validity or reliability of the test results. In fact, the record indicates that there was a 45-minute delay before appellant was picked up and removed to jail, and that there would have been a delay of at least that length of time before blood testing could have been completed. There is no suggestion in the record that even a delay of that length would render test results invalid.

Appellant's driver's license was revoked for 6 months for failure to permit chemical testing. On appeal, the district court submitted the issue of the reasonableness of appellant's refusal of chemical testing to the jury, denying appellant's motion for a directed verdict and his requests for jury instructions that he had a right to consult counsel before deciding whether to consent to chemical testing. The jury, by a five-sixths verdict, found that appellant did not have reasonable grounds to refuse testing. The district court ordered judgment sustaining revocation of appellant's license, and appellant appeals from the judgment entered.

## CONSTITUTIONAL RIGHT TO COUNSEL BEFORE DECIDING WHETHER TO CONSENT TO CHEMICAL TESTING

Appellant argues that he had a constitutional right to confer with counsel before he could be required to respond to a request to permit chemical testing, where such a conference would not unduly burden the arresting officer or substantially delay chemical testing. In asserting such a right, he asks us to overrule our decision in State v. Palmer, 291 Minn. 302, 191 N. W. 2d 188 (1971), in which we held that a driver does not have a constitutional right to consult with counsel before deciding whether to accede to an officer's request to submit to a chemical test. With virtual unanimity, state courts outside Minnesota have denied such a right.[3] The bases of all these holdings, including our decision in Palmer, have been that driver's license revocation is a civil proceeding and, as a corollary, that the taking of a chemical

[3] See, Campbell v. Superior Court, 106 Ariz. 542, 479 P. 2d 685 (1971); Goodman v. Orr, 19 Cal. App. 3d 845, 97 Cal. Rptr. 226 (1971); Finley v. Orr, 262 Cal. App. 2d 656, 69 Cal. Rptr. 137 (1968); Calvert v. State, Dept. of Revenue, 184 Colo. 214, 519 P. 2d 341 (1974); Davis v. Pope, 128 Ga. App. 791, 197 S. E. 2d 861 (1973); Mills v. Bridges, 93 Idaho 679, 471 P. 2d 66 (1970); Morgan v. Dept. of Public Safety, 227 N. W. 2d 155 (Iowa 1975); Swenumson v. Iowa Dept. of Public Safety, 210 N. W. 2d 660 (Iowa 1973); Gottschalk v. Sueppel, 258 Iowa 1173, 140 N. W. 2d 866 (1966); Harrison v. State, Dept. of Public Safety, 298 So. 2d 312 (La. App. 1974); Whitaker v. State, Dept. of Public Safety, 264 So. 2d 725 (La. App. 1972); State v. Severino, 537 P. 2d 1187 (Hawaii 1975); Lewis v. Nebraska State Dept. of Motor Vehicles, 191 Neb. 704, 217 N. W. 2d 177 (1974); Rusho v. Johns, 186 Neb. 131, 181 N. W. 2d 448 (1970); Harlan v. State, 113 N. H. 194, 308 A. 2d 856 (1973); State v. Pandoli, 109 N. J. Super. 1, 262 A. 2d 41 (1970); Story v. Hults, 19 N. Y. 2d 936, 281 N. Y. S. 2d 342, 228 N. E. 2d 398 (1967); Finocchairo v. Kelly, 11 N. Y. 2d 58, 226 N. Y. S. 2d 403, 181 N. E. 2d 427, certiorari denied, 370 U. S. 912, 82 S. Ct. 1259, 8 L. ed. 2d 405 (1962); Agnew v. Hjelle, 216 N. W. 2d 291 (N. D. 1974); Phares v. Dept. of Public Safety, 507 P. 2d 1225 (Okla. 1973); Robertson v. State, 501 P. 2d 1099 (Okla. 1972); Stratikos v. Dept. of Motor Vehicles, 4 Ore. App. 313, 477 P. 2d 237 (1970), petition for rehearing denied, 478 P. 2d 654 (1971); Commonwealth v. Morris, 218 Penn.

test is not a "critical stage" in a criminal prosecution.[4] Upon reflection, we have some doubt as to the continuing vitality of these cases.

While driver's license revocation proceedings have been labeled "civil" in nature, ostensibly because they are conducted by the commissioner of public safety in administrative proceedings and reviewed in the courts as such, we do not view the "civil" label as dispositive in view of the important constitutional rights which may be involved. First, driver's license revocation for failure to submit to chemical testing is necessarily and inextricably intertwined with an undeniably criminal proceeding—namely, prosecution for driving while under the influence of an alcoholic beverage. The severe penalty for an unreasonable refusal to permit testing, i. e., mandatory 6-month revocation of a driver's license, may in many cases impose a greater burden on the driver than conviction of the crime of driving under the influence.[5] The obvious and intended effect of the implied-consent law is to coerce the driver suspected of driving under the influence into "consenting" to chemical testing, thereby allowing scientific evidence of his blood-alcohol content to be used against him in a sub-

Super. 347, 280 A. 2d 658 (1971); Blow v. Commr. of Motor Vehicles, 83 S. D. 628, 164 N. W. 2d 351 (1969); State v. Dellveneri, 128 Vt. 85, 258 A. 2d 834 (1969); Deaner v. Commonwealth, 210 Va. 285, 170 S. E. 2d 199 (1969).

[4] See, United States v. Wade, 388 U. S. 218, 87 S. Ct. 1926, 18 L. ed. 2d 1149 (1967); Gilbert v. California, 388 U. S. 263, 87 S. Ct. 1951, 18 L. ed. 2d 1178 (1967).

[5] Minn. St. 169.121, subd. 3, provides: "Every person who is convicted of a violation of this section shall be punishable by imprisonment of not less than ten days nor more than 90 days, or by a fine of not less than $10 nor more than $300, or both, and his driver's license shall be revoked for not less than 30 days, except that every person who is convicted of a violation of this section, when such violation is found to be the proximate cause of grievous bodily injury or death to another person, shall be punished by imprisonment for not less than 60 days nor more than 90 days, or by fine of not more than $300, or both and his driver's license shall be revoked for not less than 90 days."

sequent prosecution for that offense. State, Dept. of Highways, v. Schlief, 289 Minn. 461, 463, 185 N. W. 2d 274, 275 (1971). The license revocation proceeding thus becomes an arm of the prosecutor in his attempt to gather evidence against the accused for use in criminal prosecution. Moreover, it is used as a means of obtaining evidence *at the time of arrest or detention for suspicion of driving under the influence.* Only *after* the driver makes his decision regarding the test does the proceeding divide clearly into its civil and criminal aspects—civil, if testing is refused; criminal, if testing is consented to; or both, if testing is refused, but the prosecutor nonetheless has sufficient evidence to obtain a conviction and elects to do so. Under these circumstances, we cannot see why evidence gathering for prosecution for driving under the influence using implied-consent procedures is any less subject to constitutional scrutiny than other evidence-gathering procedures such as searches, use of informers, or custodial interrogation.

Second, revocation of a driver's license for 6 months may have an impact on the ordinary driver at least as devastating as the traditional criminal sanctions of a fine and imprisonment. A driver's license is no longer a luxury or mere privilege to most citizens, but a prerequisite to earning a livelihood. As the United States Supreme Court stated in Bell v. Burson, 402 U. S. 535, 539, 91 S. Ct. 1586, 1589, 29 L. ed. 2d 90, 94 (1971):

"* * * Once [driver's] licenses are issued, as in petitioner's case, their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment. *Sniadach v. Family Finance Corp.,* 395 U. S. 337 (1969); *Goldberg v. Kelly,* 397 U. S. 254 (1970). This is but an application of the general proposition that relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a 'right' or a 'privilege.' *Sherbert v. Verner,*

374 U. S. 398 (1963) (disqualification for unemployment compensation); *Slochower v. Board of Education,* 350 U. S. 551 (1956) (discharge from public employment); *Speiser v. Randall,* 357 U. S. 513 (1958) (denial of a tax exemption); *Goldberg v. Kelly, supra* (withdrawal of welfare benefits). See also *Londoner v. Denver,* 210 U. S. 373, 385-386 (1908); *Goldsmith v. Board of Tax Appeals,* 270 U. S. 117 (1926); *Opp Cotton Mills v. Administrator,* 312 U. S. 126 (1941)."

We cannot allow a "civil" label to obscure the quasi-criminal consequences of revocation to the ordinary citizen.

Third, the decision whether to take or refuse chemical testing is arguably a "critical stage" in the driving-under-the-influence proceeding. In United States v. Wade, 388 U. S. 218, 87 S. Ct. 1926, 18 L. ed. 2d 1149 (1967), the Supreme Court recognized a right to counsel at a postindictment lineup. The court characterized a critical stage as one at which the "presence of his counsel is necessary to preserve the defendant's basic right to a fair trial as affected by his right meaningfully to cross-examine the witnesses against him and to have effective assistance of counsel at the trial itself." 388 U. S. 227, 87 S. Ct. 1932, 18 L. ed. 2d 1157. The court stated that in determining whether a stage was critical, it would "analyze whether potential substantial prejudice to defendant's rights inheres in the particular confrontation and the ability of counsel to avoid that prejudice." 388 U. S. 227, 87 S. Ct. 1932, 18 L. ed. 2d 1157. Although the court observed that analyzing scientific tests was not such a stage because knowledge of scientific techniques was sufficiently available and variations in those techniques were few enough that the accused had an opportunity for meaningful confrontation at trial through examination and cross-examination of experts, the court was not there confronting an implied-consent law which makes the consent of the accused a major factor in the state's prosecution against him for driving under the influence. Minn. St. 169.123, subd. 4, provides in part: "If a person refuses to permit chemical testing, none shall be given. * * *."

Thus, while the legislature conceivably could constitutionally have made testing mandatory under Schmerber v. California, 384 U. S. 757, 86 S. Ct. 1826, 16 L. ed. 2d 908 (1966), it chose to allow the driver who is requested to submit to testing a choice, under penalty of a 6-month license revocation for an unreasonable refusal.

The choice, however, may be a meaningful one to an individual driver. For example, the driver who is requested to submit to chemical testing might not know that he can reasonably refuse the test in certain circumstances where the officer did not have reasonable ground for arrest or for requesting the test, did not properly inform the driver of his rights, or confused the driver as to his rights. State, Dept. of Highways, v. Beckey, 291 Minn. 483, 192 N. W. 2d 441 (1971). Moreover, depending upon the individual driver's circumstances, the decreased possibility of criminal conviction may be worth the 6-month loss of his license if he does not depend on his driver's license for his livelihood. If the driver was involved in an accident resulting in death, he might face more serious criminal proceedings in which the test results could be important evidence against him. In the above instances, and others we cannot immediately foresee, a driver requested to submit to testing might want to seriously consider refusing the test. While such situations may be rare, they are certainly not impossible or even highly improbable. When those situations do arise, the driver must make a critical and binding decision regarding chemical testing which will affect him in subsequent proceedings. This decision is just as critical and just as binding as a decision regarding whether to make a verbal statement, which is one zealously protected by current case law. Escobedo v. Illinois, 378 U. S. 478, 84 S. Ct. 1758, 12 L. ed. 2d 977 (1964). See, also, Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. ed. 2d 694 (1966). A driver ought to have the assistance of his own counsel in making the decision about whether to refuse testing.

Even in the vast majority of cases in which competent counsel

would advise his client to take the test, the valuable right to counsel is not wasted. An arrested driver may be confused, dazed, and suspicious of the arresting officer, not only because of the possible influence of alcohol, but perhaps because of injury due to accident, and other reasons. Where the important chemical-testing procedures are not unreasonably delayed or impaired, the driver should have the benefit of the knowledgeable advice of his own counsel, who may assure him that the officer's statements about his rights and obligations are correct. The recognition of such a right will encourage compliance with the chemical-testing procedures in an atmosphere of fundamental fairness.

The New York Court of Appeals recognized a limited right to counsel before chemical testing in People v. Gursey, 22 N. Y. 2d 224, 227, 292 N. Y. S. 2d 416, 418, 239 N. E. 2d 351, 352 (1968), and held:

"In light of current recognition of the importance of counsel in criminal proceedings affecting significant legal rights, law enforcement officials may not, without justification, prevent access between the criminal accused and his lawyer, available in person or by immediate telephone communication, if such access does not interfere unduly with the matter at hand. This court recently noted, in another context, that: 'As a matter of fairness, government ought not compel individuals to make binding decisions concerning their legal rights in the enforced absence of counsel' [People v. Ianniello, 21 N. Y. 2d 418, 424, 288 N. Y. S. 2d 462, 235 N. E. 2d 439, 443; see, Escobedo v. State of Illinois, 378 U. S. 478, 486, 84 S. Ct. 1758, 12 L. ed. 2d 977; People v. Donovan, 13 N. Y. 2d 148, 153, 243 N. Y. S. 2d 841, 844, 193 N. E. 2d 628, 630]. In the present case, defendant possessed a number of statutory options which could be asserted only during the transaction at the station house, and concerning which the advice of counsel, if available, was relevant."

The court was careful to point out that the privilege of consultation with counsel did not extend so far as to impair implied-consent procedures or nullify test results through delay and

blood-alcohol dissipation. The court limited the right in the following manner:

"* * * If the lawyer is not physically present and cannot be reached promptly by telephone or otherwise, the defendant may be required to elect between taking the test and submitting to revocation of his license, without the aid of counsel." 22 N. Y. 2d 229, 292 N. Y. S. 2d 419, 239 N. E. 2d 353.[6]

Despite the above analysis and the Gursey decision, we decline counsel's invitation to rest our decision in the instant case on constitutional grounds. We do so because we do not believe the legislature intended a blanket denial of right to counsel in implied-consent situations. Because we find in the implied-consent statute itself and in our general statutory provisions governing right and access to counsel sufficient basis for a limited right to counsel, we refrain from deciding the constitutional issue raised.

---

[6] There is some debate about the current state of implied-consent law in New York because the Court of Appeals had, sometime before People v. Gursey, 22 N. Y. 2d 224, 292 N. Y. S. 2d 416, 239 N. E. 2d 351 (1968), held that there was no right to counsel because of the civil nature of revocation proceedings. Finocchairo v. Kelly, 11 N. Y. 2d 58, 226 N. Y. S. 2d 403, 181 N. E. 2d 427, certiorari denied, 370 U. S. 912, 82 S. Ct. 1259, 8 L. ed. 2d 405 (1962). See, also, Story v. Hults, 19 N. Y. 2d 936, 281 N. Y. S. 2d 342, 228 N. E. 2d 398 (1967). The court, however, was careful to distinguish Finocchairo in the Gursey opinion "Where the defendant wishes only to telephone his lawyer or consult with a lawyer present in the station house or immediately available there, no danger of delay is posed. But, to be sure, there can be no recognition of an absolute right to refuse the test until a lawyer reaches the scene [see, Matter of Finocchairo v. Kelly, 11 N. Y. 2d 58, 61, 226 N. Y. S. 2d 403, 405, 181 N. E. 2d 427, 429. (Van Voorhis, J., concurring)]." 22 N. Y. 2d 229, 292 N. Y. S. 2d 419, 239 N. E. 2d 353. Thus, the court distinguished between an absolute right (presumably one which might involve a delay long enough to impair testing results) and the more limited right it chose to recognize. See, also, Leopold v. Tofany, 68 Misc. 2d 3, 325 N. Y. S. 2d 24, affirmed on other grounds, 38 App. Div. 2d 550, 327 N. Y. S. 2d 999 (1971).

## STATUTORY PROVISIONS GOVERNING RIGHT TO COUNSEL BEFORE DECIDING WHETHER TO CONSENT TO CHEMICAL TESTING

Minn. St. 481.10 provides:

"All officers or persons having in their custody a person restrained of his liberty upon any charge or cause alleged, except in cases where imminent danger of escape exists, shall admit any resident attorney retained by or in behalf of the person restrained, or whom he may desire to consult, to a private interview at the place of custody. Such custodians, upon request of the person restrained, as soon as practicable, and before other proceedings shall be had, shall notify any attorney residing in the county of the request for a consultation with him. Every officer or person who shall violate any provision of this section shall be guilty of a misdemeanor and, in addition to the punishment prescribed therefor shall forfeit $100 to the person aggrieved, to be recovered in a civil action."

This statute has been a part of the law and public policy of Minnesota since 1887. The statute has been construed only once. In State v. Schabert, 218 Minn. 1, 15 N. W. 2d 585 (1944), we held that an examination or inquisition of an accused person was a "proceeding" within the meaning of the statute. The Schabert case was decided against a background of 2 days of incommunicado interrogation of the defendant, and a refusal by officers to permit her to contact anyone until a confession was obtained. The decision in Schabert and the citation of § 481.10 reflect a longstanding Minnesota policy to allow accused persons immediate access to counsel so that those persons would have assistance in securing their rights regarding bail, police interrogation, preparation of a defense, etc.

Three members of this court, Mr. Justice Otis, Mr. Justice Rogosheske, and this writer, dissented in State v. Palmer, 291 Minn. 302, 191 N. W. 2d 188, on the ground that § 481.10 required an officer to notify the arrested driver's attorney of a re-

quest for consultation before proceeding to chemical testing under the implied-consent statute. As Mr. Justice Otis wrote:

"As I read Minn. St. 481.10, the arresting officers had an absolute duty to notify defendant's attorney of his request for consultation before proceeding any further with the chemical tests once defendant had asked for an opportunity to call his lawyer. That statute, with emphasis provided, reads thus:

" 'All officers or persons having in their custody a person restrained of his liberty upon any charge or cause alleged, except in cases where imminent danger of escape exists, shall admit any resident attorney retained by or in behalf of the person restrained, or whom he may desire to consult, to a private interview at the place of custody. *Such custodians, upon request of the person restrained, as soon as practicable, and before other proceedings shall be had, shall notify any attorney residing in the county of the request for a consultation with him.* Every officer or person who shall violate any provision of this section shall be guilty of a misdemeanor and, in addition to the punishment prescribed therefor shall forfeit $100 to the person aggrieved, to be recovered in a civil action.'

"It is undisputed that as soon as defendant was advised of the effect of his refusal to take the test, he made a timely request for an opportunity to consult counsel. This resulted in no undue delay or any prejudice to the state in administering the test. Under such circumstances, I submit it was unreasonable for the arresting officers to refuse to administer the test after defendant was advised by his attorney to submit to testing. In my opinion, it is arbitrary and unjust to deny a defendant who has been arrested for driving under the influence the opportunity of making a phone call to determine his rights. I would agree that this is not a constitutional matter and that the police need not consent to a delay while an attorney appears in person or to any other delay which would prejudice the accuracy of the test. This is not such a case, however, since all that was sought and obtained was

a single phone call. Consequently, I would reverse." 291 Minn. 309, 191 N. W. 2d 192.

The majority opinion in Palmer rested only on constitutional grounds and made no reference to the dissent, apparently because the issue of right to counsel under § 481.10 had not been raised below. 291 Minn. 310, 191 N. W. 2d 192 (Rogosheske, J., dissenting). See, also, State, Dept. of Highways, v. Beckey, 291 Minn. 483, 486, note 5, 192 N. W. 2d 441, 444 (1971).

At least two other cases have recognized a limited statutory right to counsel before chemical testing: Siegwald v. Curry, 40 Ohio App. 2d 313, 69 Ohio O. 2d 293, 319 N. E. 2d 381 (1974); Gooch v. Spradling, 523 S. W. 2d 861 (Mo. App. 1975). In Siegwald, the court was confronted with a statute (Ohio Rev. Code Ann. § 2935.20 [1971]) providing in part:

"After the arrest, detention, or any other taking into custody of a person, with or without a warrant, such person shall be permitted forthwith facilities to communicate with an attorney at law of his choice who is entitled to practice in the courts of this state, or to communicate with any other person of his choice for the purpose of obtaining counsel. Such communication may be made by a reasonable number of telephone calls or in any other reasonable manner. Such person shall have a right to be visited immediately by any attorney at law so obtained who is entitled to practice in the courts of this state, and to consult with him privately. No officer or any other agent of this state shall prevent, attempt to prevent, or advise such person against the communication, visit, or consultation provided for by this section."[7]

The court upheld a finding that a driver who had indicated she would take the test after consulting her attorney, but had been denied any consultation, had not refused to take the test. The court commented:

---

[7] In McNulty v. Curry, 42 Ohio St. 2d 341, 347, 328 N. E. 2d 798, 803 (1975), the Ohio Supreme Court stated that this statute "clearly applies" to an implied-consent case, but found the statute to have been complied with in the case before it.

"It is not a refusal to take the required test for the arrested person to request the exercise of his statutory right, under R. C. § 2935.20, to telephone an attorney during this reasonable time period in which he is determining whether to take the test, *so long as the delay occasioned by such communication with the attorney is short and reasonable.*" (Italics supplied.) 40 Ohio App. 2d 318, 69 Ohio O. 2d 296, 319 N. E. 2d 385.

The court emphasized that refusal was a factual question, and upheld the finding of no refusal because it felt that the driver's request had been made in good faith, and that granting it would not have unduly delayed testing procedures. 40 Ohio App. 2d 319, 319 N. E. 2d 385.

In Gooch, the driver was adamant in his refusal to take a breathalyzer test without talking with his attorney. The lower court found no effective refusal because of Rule 37.89, Missouri Supreme Court Rules, governing traffic cases. That rule provided:

"Every person arrested and held in custody by any peace officer in any jail, police station or any other place * * * shall be permitted to consult with counsel or other persons in his behalf at all times and, for such purposes, to use a telephone if one be available."

The court, construing the above-quoted rule with the Missouri implied-consent law, found no inconsistency in allowing a limited right of consultation before testing. The court cautioned, however:

"Of course, it is conceivable that the protection of this rule could be so abused or misused by a person charged with driving while intoxicated that a chemical analysis would become useless by the lapse of time (as urged by the appellant) and that such abuse or misuse would be tantamount to a refusal to submit to the test and justify revocation. *But such is not the factual situation in this case. The licensee's request to contact his lawyer at that hour in the evening could have been accomplished by a tele-*

*phone call within a few minutes or counsel's presence secured within the hour that the request was denied.* At least, the record does not indicate otherwise." (Italics supplied.) 523 S. W. 2d 866.

We recognize that the wording of the statute and rule and the factual contexts of these cases are not identical to those in the instant case. The public policy behind the provisions for counsel and the decisions, however, is the same—to secure for the person in custody an immediate right to communicate with counsel concerning the impending proceedings against him.[8] Although the Minnesota statute does not explicitly mention telephone calls and was drafted before automobiles were commonly used, it must be interpreted in accordance with the fundamental nature of the right it affords and the technological advance of our society. The importance of a driver's license and the binding decisions which must be made by the driver asked to submit to chemical testing make the chemical-testing process a "proceeding" within the meaning of § 481.10 before which consultation with counsel is to be accorded.

To the contrary, counsel for the Department of Public Safety argues that this reading of § 481.10 is inconsistent with the thrust of our implied-consent statute. We regard the disposition of this argument as important because, if counsel is correct in his contention that the implied-consent statute forbids a limited right to counsel before chemical testing, that statute, which is later and more specific in its scope, would control. See, Minn. St. 645.26, subds. 1 and 4. We find, however, no evidence of such an intent in the statute. Minn. St. 169.123, subd. 3, which deals with the manner of taking the test and the driver's right to obtain additional testing, provides as follows:

"Only a physician, medical technician, registered nurse, medical technologist or laboratory assistant acting at the request of

---

[8] It is interesting to note that a Michigan court has solved problems of fundamental unfairness in the denial of a right to counsel in another way. Hall v. Secretary of State, 60 Mich. App. 431, 231 N. W. 2d 396 (1975) (finding due-process violation).

a peace officer may withdraw blood for the purpose of determining the alcoholic content therein. This limitation shall not apply to the taking of a breath, or urine specimen. The person tested shall have the right to a physician, a medical technician, medical technologist, laboratory assistant or registered nurse of his own choosing to administer a chemical test or tests in addition to any administered at the direction of a peace officer; provided, that the additional test specimen on behalf of said person be obtained at the place where such person is in custody and at no expense to the state. Said person shall have the right to immediately communicate with his attorney, doctor or any other person in order to secure a physician, medical technician, medical technologist, laboratory assistant or registered nurse of his own choosing for the purpose of administering such additional test or tests; but this shall in no way delay the administering of the test at the direction of the peace officer. The failure or inability to obtain an additional test or tests by a person shall not preclude the admission in evidence of the test taken at the direction of a peace officer unless the additional test was prevented or denied by the peace officer. Upon the request of the person who is tested, full information concerning the test or tests taken at the direction of the peace officer shall be made available to him. The physician, medical technician, medical technologist, laboratory assistant or registered nurse drawing blood at the request of a peace officer for the purpose of determining alcoholic content shall in no manner be liable in any civil or criminal action except for negligence in drawing the blood. The person administering such test at the request and direction of such peace officer shall be fully trained in the administration of such tests pursuant to standards promulgated by rule by the commissioner of public safety."

This section recognizes a right to consult counsel and others *immediately*, at least for the purpose of securing additional tests, with the proviso that this shall in no way delay the administering of the test. The section does not in any way deny the right

provided by § 481.10 to consult counsel for the purpose of determining whether to take the test, provided that consultation does not delay the test.

We have referred above to a *limited* right to counsel. Because of the importance of uniformity and clarity in implied-consent procedures, we would indicate specifically the nature of the right and its limitations. Consistent with this opinion, any person who is required to decide whether he will submit to a chemical test in accordance with § 169.123 shall have the right to consult with a lawyer of his own choosing before making that decision, provided that such a consultation does not unreasonably delay the administration of the test. The person must be informed of this right, and police officers must assist in its vindication. The right to counsel will be considered vindicated if the person is provided with a telephone prior to testing and given a reasonable time to contact and talk with counsel. If counsel cannot be contacted within a reasonable time, the person may be required to make a decision regarding testing in the absence of counsel. The above procedure will ensure an adequate opportunity to consult with counsel without in any substantial way delaying the administration of the test. Indeed, counsel for the department concedes in its brief:

"* * * True, a certain amount of time is nearly always spent by an arresting officer on matters apart from obtaining chemical test specimen while the arrestee remains in his presence. It may be that a suspect's use of a readily available telephone during such an unrelated delay would in some cases not at all hold up administration of a chemical test."[9]

---

[9] After making this statement, counsel then argued that it does not apply to this case because the officer had more than enough time to complete the various required forms during the 45 minutes that he was waiting for a tow truck for appellant's car. First, counsel does not argue that a very brief further delay would invalidate a test. Second, even if appellant had elected testing, and he and the officer had proceeded to a testing station, there would have been at least minimal delays in getting personnel and preparing equipment.

Thus, it is apparent that vindiction of this important right will not render ineffective the implied-consent law where the resulting delay does not exceed a reasonable time and will not affect the other important consideration here—an accurate test.

The exercise of this right, however, does raise some problems of administration. First, what sanctions should attend violation of the right? While we note that § 481.10 contains civil and criminal penalties against the police officer, these alone are not sufficient to fully vindicate the driver's right. When the driver has been coerced into making a complicated decision without the assistance of counsel required by this opinion, he should not be bound by that decision, since he might have otherwise made it differently. Therefore, if such a driver elected to take the test, the results should be suppressed. If he elected not to take the test, he should not be deemed to have unreasonably refused it and his driver's license should not be revoked.

Second, to whom should this decision apply? We recognize that police officers have reasonably relied upon our decision in State v. Palmer, *supra*, and instructed drivers that they had no right to counsel before electing whether to take the test. While we need not take the formal step of overruling Palmer, since the issue of right to counsel under § 481.10 was not squarely decided there, we would now indicate that, in the event of any inconsistency between Palmer and this case, Palmer is no longer of any force or effect. In order not to disturb the administration of our implied-consent statute, we confine the impact of our holding to the instant case, any case now pending in this court, district court, and county or municipal court, and any case arising after the date of this opinion. In all other cases, no statutory or constitutional right to counsel will be recognized under the rule of Palmer.

In the instant case the driver asserted his right to counsel and that right was denied. Therefore, under the reasoning of this opinion, he is not bound by his refusal and his license must be restored. The judgment of the district court sustaining the com-

missioner's revocation of appellant's driver's license must be reversed.

Reversed.

PETERSON, JUSTICE (concurring specially).

I concur in the result as a permissible reading of the applicable statutes.

TODD, JUSTICE (concurring specially).

I concur in the result. However, this case and the other implied-consent cases being released contemporaneously with this opinion illustrate the continuing difficulties encountered in seeking to satisfy the requirements of a Miranda warning along with the implied-consent warning. Simply stated, it is a bad marriage and it is time for a divorce. Resolution of this problem could be accomplished by the decriminalization of drunken driving. Presently, an inordinate amount of time is spent by law-enforcement officials and judicial personnel in prosecuting these cases, to say nothing of the expense involved. It is apparent that the interest of the state is to punish the guilty driver by removal of his driving privileges. The fine imposed is minimal when compared with the cost of prosecuting these cases. Further, it is apparent in most cases that the defendant exhausts his rights in the criminal proceedings for the purpose of preserving his driver's license which is a civil matter.

The legislature should remove driving under the influence from classification as a crime. Precedent exists for this action since Minnesota has already decriminalized public drunkenness, recognizing the medical, rather than the criminal, nature of this problem. The fact that the intoxicated person is operating a motor vehicle does not change the basic cause of the problem. If the crime of driving under the influence were removed from our criminal statutes, we could treat the driver's-license problem in the civil field where it belongs. The majority opinion discusses the value of a driver's privilege, but I am not prepared to indicate at this time what significant property rights are in-

volved. The legislature could establish civil procedures within the implied-consent statute which would remove the driving privilege for refusing a test. If a test were taken, a schedule of license suspension based on degree of intoxication might be considered along with the driver's past history. Furthermore, criminal proceedings would still be available to prosecute the unlicensed, intoxicated driver, or criminal-negligence charges could be brought if appropriate.

Considering the present demands upon law-enforcement officials and the courts, and also the societal interest in suspending the driving privileges of intoxicated drivers, together with Minnesota's history of leadership in acknowledging the medical problems involved in excessive consumption of alcoholic beverages, the proposal to decriminalize drunken driving should be considered by the legislature.

It should be noted that the legislature has already laid the groundwork for the change proposed in this opinion by its enactment of L. 1976, c. 341, which provides for license revocation in a civil proceeding for drivers whose test results indicate a blood-alcohol content of .10 percent or more. The new law, however, retains the traditional criminal sanctions of fine and imprisonment contained in Minn. St. 169.121, and the possibility of criminal as well as civil action against the offending driver. In this writer's view, the legislature should complete the task of decriminalization in drunken-driving cases where no death results in order that the drunken-driving problem may be dealt with by the more relevant means—license revocation and treatment.

SHERAN, CHIEF JUSTICE (concurring specially).

I agree with the opinions of Mr. Justice Peterson and Mr. Justice Todd.

SCOTT, JUSTICE (concurring specially).

I concur in the opinion of the court, but would add my own thoughts on the difficulties and confusion inherent in the

driving-under-the-influence and implied-consent enforcement scheme. The implied-consent law is found in Minn. St. 169.123, subd. 2, which provides in part:

"Any person who drives or operates a motor vehicle upon the public highways of this state shall be deemed to have given consent subject to the provisions of this section and section 169.121, subdivision 2, to a chemical test of his blood, breath, or urine for the purpose of determining the alcoholic content of his blood."

Minn. St. 169.123, subd. 4, provides in part:

"If a person refuses to permit chemical testing, none shall be given, but the commissioner of public safety, upon the receipt of a certificate of the peace officer that he had reasonable and probable grounds to believe the person had been driving or operating a motor vehicle upon the public highways while under the influence of an alcoholic beverage, and that the person had refused to permit the test, shall revoke his license or permit to drive * * * for a period of six months."

This entire statutory procedure has been widely held to be a civil administrative function. Upon a driver's refusal to submit to chemical testing, the administrative revocation procedure is automatic. Should the driver submit to a test, information acquired in this civil proceeding is available for use as evidence in a criminal prosecution.[1] We are not directly concerned with the criminal phase of the dual-purpose, implied-consent law, except to the extent that this effort to gather constitutionally admissible evidence in a criminal prosecution may cause a "chilling effect" because of the hovering threat of the severe penalty of losing one's driver's license for 6 months and suffering resulting financial and physical burdens, including more expensive insurance in the future as well as possible loss of employment.

[1] It should also be noted that L. 1976, c. 341, provides for the revocation of a driver's license for 90 days by the commissioner of public safety upon receipt of chemical-test results that the person's blood contains .10-percent or more alcohol.

A second resultant "chilling effect" which may result from the procedure may be the utter confusion that rages in a driver's mind when he is told both that he has a right to remain silent and a right to an attorney, and then told that he must decide whether he will submit to chemical testing without attorney consultation.

Despite the civil character of this procedure, it may nevertheless be factually compared with Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. ed. 2d 694 (1966), in which the United States Supreme Court established standards for procedural safeguards to protect the privilege against self-incrimination during custodial interrogation. Necessarily, under Miranda, should the defendant demand that an attorney be present, all interrogation in the absence of counsel must cease. However, in the instant case, evidence obtained after the appellant requested an attorney was admitted before the jury. Although this was a civil proceeding, the reasoning we employed in State v. Roberts, 296 Minn. 347, 353, 208 N. W. 2d 744, 747 (1973), still applies:

"We hold that the testimony by the interrogating officer that defendant requested counsel when asked if he had committed the crime had no legitimate probative value or any other proper use, and it was error to allow its admission. Since the jury was likely to infer from the testimony that defendant was concealing his guilt, admission of the testimony was constitutional error because its effect was to penalize defendant impermissibly for exercising his constitutional privilege."

We also held, in State v. Andrews, 297 Minn. 260, 212 N. W. 2d 863 (1973), that the admission into evidence of the defendant's refusal to submit to chemical testing in a prosecution for driving while under the influence of an alcoholic beverage, Minn. St. 169.121, was violative of defendant's privilege against compelled self-incrimination. In the similar case of State v. Schlinger, 299 Minn. 212, 216 N. W. 2d 835 (1974), the admission of such evidence was again held to be prejudicial error mandating reversal.

Obtaining chemical evidence indicating the percentage of alcohol in the bloodstream involves Fourth Amendment protections, and the right to counsel and right to remain silent are Fifth and Sixth Amendment rights. Therefore, these quasi-criminal statutory procedures dealing with persons already under arrest are dangerously close to violations of constitutional protections. Part of the problem is the confusion which results from the arrest procedure involved. At least a portion of this confusion may have been the result of intoxication here. Yet a great part of this uncertainty must be attributed to the inconsistencies found within the implied-consent law itself, which denies one the right to an attorney before testing, while Minn. St. 169.123, subd. 3, provides that "[s]aid person shall have the right to immediately communicate with his attorney."

This court has discussed the issue of whether refusal to submit to chemical testing was based upon a confusion spawned by a Miranda warning in juxtaposition to the demand that one answer without assistance of counsel. State, Dept. of Highways, v. Beckey, 291 Minn. 483, 192 N. W. 2d 441 (1971); State, Dept. of Public Safety, v. Nystrom, 299 Minn. 224, 217 N. W. 2d 201 (1974). It is at least suggested that an intelligent layman, whether or not under the influence of an intoxicant, might find it difficult in some circumstances to understand the apparent contradictions as to the availability of an attorney.

Because of the availability of statutory grounds for decision, we have not reached the issue of whether the totality of circumstances in this case amounts to a violation of due process or whether other particular constitutional provisions were violated. We reserve such a decision for some possible future factual setting.

On November 5, 1976, the following was filed:

## ON PETITION FOR REHEARING

KELLY, JUSTICE.

The State of Minnesota, Department of Public Safety, asks for clarification of the class of persons to which our decision in

428

Prideaux v. State applies. The Department seeks prospective application only of the requirement that a police officer advise a driver of his right to confer with counsel. Appellant in his answer to the petition for rehearing accedes to this proposition, noting that it is implicit in the decision. We agree. Because police officers have reasonably relied on our earlier decision in State v. Palmer, 291 Minn. 302, 191 N. W. 2d 188 (1971), it was our intent that the informational requirement be applied only to cases arising after the date of the decision. The holding on the facts of the instant case was more narrow—appellant requested an opportunity to consult with an attorney and his request was denied. These circumstances define the impact of our holding to cases pending on the date of the decision in this court, district court, and county or municipal court. In all other cases predating the decision, no right to counsel will be recognized under the Rule of Palmer. Except for this clarification, the petition for rehearing is denied.