Colin Todd DELMORE, Petitioner, Respondent,

v.

COMMISSIONER OF PUBLIC SAFETY, Appellant.

No. C7–92–1913.

Court of Appeals of Minnesota.

May 11, 1993.

Jeffrey B. Ring, Alan H. Caplan & Associates, Minneapolis, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Jeffrey Bilcik, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Before considered and decided by RANDALL, P.J., and HUSPENI and PETERSON, JJ.

## OPINION

RANDALL, Judge.

Respondent Colin Todd Delmore was arrested for DWI, and his driver's license was revoked pursuant to the implied consent law. Respondent petitioned for judicial review, and the trial court ordered that the revocation be rescinded. The Commissioner of Public Safety appeals, and respondent filed a notice of review. We affirm.

## FACTS

After arriving at the scene of an accident, Officer David Mattson arrested respondent for DWI and read him the implied consent advisory. Respondent testified that the officer asked him if he wanted to talk to a lawyer and he said yes. The officer immediately picked up a telephone, dialed a number and handed the phone to respondent indicating that here was the attorney to talk to. The officer testified he called a public defender. Based upon the

advice he received during the phone call, respondent refused testing.

Respondent testified he questioned the officer during a pause which occurred after the officer handed the phone to him, and the officer made it clear to him that this was the procedure which was used. The officer also made it clear to respondent that the officer was in charge. Respondent testified he did not have an opportunity to look through the yellow pages or ask for his own attorney. Respondent testified that he talked to someone on the telephone, but he did not know if the person was a lawyer, and, if so, she was not the lawyer respondent would have chosen.[1] Respondent did not ask for any other attorney after he finished his telephone call with the public defender. Respondent testified that he believed that there was a designated attorney "he had to talk to" and that Officer Mattson dialed that number. According to respondent, he complied because he did not want to be disrespectful. Respondent said if he knew he had a choice, he would have called an attorney that he knew. Respondent said he did not feel he had a choice and did not want to irritate the officer who just handed him the already-dialed phone.

During respondent's telephone conversation, the officer did not leave the room. The officer testified that he did not concern himself with respondent's telephone conversation. To the contrary, respondent testified the officer was paying close attention to him, listened to him talk to the attorney, and the closeness of the officer intimidated him.

At the close of the hearing, the trial court expressed dissatisfaction with the policy where an officer automatically calls the public defender's office when a DWI defendant asks to speak with an attorney. The trial court noted the incongruity where respondent, driving a Porsche, received legal advice from a public defender. The trial court also noted the insecurity that might exist on the part of a defendant

1. As part of the record, respondent indicated he had no way of knowing for sure who the officer called, but it is not in dispute for purposes of our appellate review that a legitimate public defender listened to respondent and offered him legal advice.

where a police officer dials the telephone and says the person on the other end of the line is an attorney. The trial court noted the possibility that the officer could call someone who has agreed to pretend to be an attorney and advise defendants to take the test.

The trial court's comments on the record expressed clear dissatisfaction with the choice or, more accurately, the lack of choice, respondent had in utilizing his limited, but still constitutional, right to consult an attorney. However, in its subsequent written order, the trial court ruled only on the privacy issue. The trial court found respondent's right to counsel had been violated because he was not provided with the privacy to consult with counsel.

The Commissioner of Public Safety appeals, challenging the ruling that respondent's right to counsel was violated because he was not given privacy. Respondent filed a notice of review, contending that his right to counsel was violated because he was not allowed to speak with an attorney of his own choosing.

## ISSUES

1. Was respondent's right to counsel violated because he was not given privacy to consult with counsel?

2. Was respondent's right to counsel violated because he was not allowed to consult with an attorney of his own choosing?

## ANALYSIS

### I.

■ The first issue in this case is resolved by *Commissioner of Pub. Safety v. Campbell*, 494 N.W.2d 268 (Minn.1992). There, the court held police do not have to provide a private telephone when the driver invokes the limited right to consult with counsel prior to deciding whether to take the implied consent test. *Id.* at 269–70. It ruled the arrestee's rights are sufficiently protected by the subsequent exclusion of any overheard statements. *Id.*

Respondent makes solid arguments regarding the rights of privacy and confidentiality between an attorney and client. We

do not believe the court in *Campbell* undercut this relationship, but somehow, for practicality's sake, determined a private conversation was not necessary to vindicate this right in view of the fleeting nature of blood alcohol content. Pursuant to *Campbell*, the officer was not required to provide respondent with a private consultation with counsel.

We note that *Campbell* did not speak directly to the issue respondent claims is present here, namely, that the officer deliberately listened to the driver's conversation to obtain information useful for prosecution and to intimidate the driver. However, we need not speculate what the *Campbell* court would have said in light of those allegations because we conclude that the second issue, respondent's right to consult with an attorney of his own choosing, is dispositive.

### II.

■ The parties agree the second issue, a driver's right to contact an attorney of his choice, was not addressed by *Campbell*. A driver who is subjected to the implied consent law has the right to a reasonable opportunity to obtain legal advice before deciding whether to submit to chemical testing. *Friedman v. Commissioner of Pub. Safety*, 473 N.W.2d 828, 835 (Minn. 1991). The court recognized the right to contact counsel is there, but in alcohol testing situations is limited due to the evanescent nature of alcohol. We look to *Prideaux v. State, Dep't of Pub. Safety*, 310 Minn. 405, 247 N.W.2d 385 (1976) and case law following it for guidance:

Consistent with this opinion, any person who is required to decide whether he will submit to a chemical test * * * *shall have the right to consult with a lawyer of his own choosing* before making that decision, provided that such a consultation does not unreasonably delay the administration of the test. The person must be informed of this right, and the police officers must assist in its vindication. The right to counsel will be considered vindicated if the person is provided with a telephone prior to testing and

given a reasonable time to contact and talk with counsel. If counsel cannot be contacted within a reasonable time, the person may be required to make a decision regarding testing in the absence of counsel.

*Friedman,* 473 N.W.2d at 835 (quoting *Prideaux,* 310 Minn. at 421, 247 N.W.2d at 394) (emphasis added). Thus, drivers required to decide whether they will submit to a breath test have the right to consult with a lawyer of their "own choosing." *Prideaux,* 310 Minn. at 421, 247 N.W.2d at 394.

We faced a similar issue in *Clough v. Commissioner of Pub. Safety,* 360 N.W.2d 428 (Minn.App.1985). The driver there did not initially choose to call a public defender, but instead acquiesced in the suggestion that he do so. The public defender's answering service was called. When the public defender finally returned the call 20 minutes later, the officer determined the driver had already refused testing, and the public defender did not talk to him. The driver then asked to telephone his parents for the name and telephone number of their attorney, but the officer refused. This court held that under the circumstances, the driver should have been allowed to contact his parents. *Id.* at 430. The driver did not initially ask to call the public defender, and never had the opportunity to speak to one. *Id.* at 429.

This case does not raise the issue of whether the driver was prevented or hindered from consulting an attorney, nor does it address the issue where the driver qualifies for a public defender but then does not like the one assigned. It raises the simple issue of whether the driver has the right to obtain an attorney *of the driver's own choosing.* Here, in reality, law enforcement "chose" the public defender for respondent. The record supports respondent's testimony that he was told this was the procedure and he had no reason to believe he could insist on calling another attorney of his own choice. We find, on this record, respondent was denied the right to choose his own attorney. We affirm the trial court's rescission of respondent's license revocation on these grounds.

*See Prideaux,* 310 Minn. at 421, 247 N.W.2d at 394; *Clough,* 360 N.W.2d at 430.

### DECISION

We affirm the trial court's order rescinding the revocation of respondent's driver's license. Respondent was denied his right to counsel of his own choosing.

**Affirmed.**