STATE, DEPARTMENT OF PUBLIC SAFETY, v.
LAWRENCE ROMAN KNEISL.

251 N. W. 2d 645.

March 4, 1977—No. 46789.

*Warren Spannaus,* Attorney General, and *Joel A. Watne,* Special Assistant Attorney General, for appellant.

*Bradford, Kennedy & Nervig* and *Charles R. Kennedy,* for respondent.

Heard before Kelly, Todd, and Winton, JJ., and considered and decided by the court en banc.

TODD, JUSTICE.

Lawrence Roman Kneisl was arrested by a Wadena policeman for operating a motor vehicle while under the influence of an alcoholic beverage, Minn. St. 169.121, and for other traffic offenses. Kneisl was transported to the county jail in Wadena where, after his arrival, he telephoned his attorney. The attorney appeared at the jail approximately 1/2 hour later and requested a private consultation with his client. After this request was denied, Kneisl refused to take any of the chemical tests provided for in the implied-consent statute, Minn. St. 169.123. The jury returned a verdict that Kneisl did not have reasonable grounds to refuse the testing. The trial court, in response to a motion for a directed verdict which had been taken under advisement, vacated the jury verdict and held that Kneisl had reasonable grounds to refuse the testing as a matter of law. We affirm.

At the commencement of the trial, the parties stipulated that the only issue before the court was whether reasonable grounds were present for Kneisl to refuse to take the implied-consent tests. The evidence discloses that the arresting officer first offered to administer the implied-consent tests to Kneisl in the squad car on the way to the jail. Upon Kneisl's arrival at the jail at approximately 8:15 p. m., after his initial request to telephone his attorney had been refused, he was ultimately afforded an opportunity to do so.

After Kneisl completed the telephone call to his attorney, the arresting officer read the implied-consent advisory to Kneisl, who indicated confusion concerning his rights. He offered to take a breath test, which could not be administered because the

breathalyzer machine was out of order. The arresting officer then began to fill out the implied-consent advisory form, reading the questions to Kneisl and recording his answers. The officer testified that while reading the form, he avoided references to the breath test, and in two of the four places on the form where the word "breath" appears, he crossed it out. There is a conflict in testimony as to whether the form had been completed when Kneisl's attorney arrived at the jail. However, we do not regard this as a crucial factor. It is conceded that if the test had been administered after the attorney had arrived and after he had been allowed a short conference with his client, the validity of the results would not be impaired.

Kneisl testified that the following took place when his attorney arrived at the jail:

"Q. All right. Then what happened when Mr. Bradford appeared in the room now, were you and Officer Young —

"A. Well, he asked the officer what — some questions about what I had done or something, and Officer Young had told him, and that we were on this Implied Consent Advisory — or Law here now, and Mr. Bradford said, 'Well, could I speak to him for just a moment in private,' you know, and Officer Young said, 'No, you can't do that.' And well, he said, 'Since when can't you talk to your lawyer in private?' And the one said, 'Well, it's jail policy, you can't do that any more.'

"Q. Who said that?

"A. That had to be Randy Hanson.

"Q. Who was still in the room?

"A. Yes. He had to come into the room because it was jail policy, he said. And Mr. Bradford just kind of laughed. He said he never heard of anything like that, you know, where you can't talk to your lawyer in private.

"Q. Now, did Mr. Bradford make the statement he wanted to talk to you for a minute?

"A. Yes.

"Q. Was Officer Young there?

"A. Yes.

"Q. In the room?

"A. Yup. There was Officer Young and the reserve officer, Jerry Anderson and one more.

\* \* \* \* \*

"Q. Now, continue then, pick it up from the point where you were told then it was jail policy that you could not talk to your lawyer alone; what happened next?

"A. At that point when — when Ray was told that he couldn't — it was jail policy, then he said, 'You will just have to go it yourself, try to understand it.' And so, I just — right then I just refused to take any test because I couldn't talk to my lawyer alone, Mr. Bradford in private, because I didn't understand any of this. I didn't know about any Implied Consent Law."

Kneisl's version of what transpired after his attorney's arrival at the jail is supported by the testimony of the arresting officer. The officer testified that, while Kneisl was in his custody, he would not permit a private consultation between Kneisl and his attorney because he did not "feel that he had the right to talk to him at that time."

At the close of the state's case, a motion for directed verdict was made by Kneisl's counsel. The court took the motion under advisement. The matter was submitted to the jury which found that Kneisl did not have reasonable grounds to refuse the implied-consent tests. Thereafter, the trial court, acting on the motion for directed verdict, held that Kneisl had reasonable grounds to refuse testing as a matter of law and set aside the jury verdict. Judgment was entered denying revocation of Kneisl's driver's license. The state filed this appeal following a denial of its motion to vacate the judgment and reinstate the jury verdict.

■ We are presented with the application in an implied-consent case of Minn. St. 481.10 which provides:

"All officers or persons having in their custody a person restrained of his liberty upon any charge or cause alleged, except

in cases where imminent danger of escape exists, shall admit any resident attorney retained by or in behalf of the person restrained, or whom he may desire to consult, *to a private interview at the place of custody*. Such custodians, upon request of the person restrained, as soon as practicable, and before other proceedings shall be had, shall notify any attorney residing in the county of the request for a consultation with him. Every officer or person who shall violate any provision of this section shall be guilty of a misdemeanor and, in addition to the punishment prescribed therefor shall forfeit $100 to the person aggrieved, to be recovered in a civil action." (Italics supplied.)

Recently, in Prideaux v. State, Dept. of Public Safety, 310 Minn. 405, 247 N. W. 2d 385 (1976), we recognized a limited right to counsel under § 481.10 when a person is arrested for allegedly violating § 169.121. We stated:

"We have referred above to a *limited* right to counsel. Because of the importance of uniformity and clarity in implied-consent procedures, we would indicate specifically the nature of the right and its limitations. Consistent with this opinion, any person who is required to decide whether he will submit to a chemical test in accordance with § 169.123 shall have the right to consult with a lawyer of his own choosing before making that decision, provided that such a consultation does not unreasonably delay the administration of the test. The person must be informed of this right, and police officers must assist in its vindication. The right to counsel will be considered vindicated if the person is provided with a telephone prior to testing and given a reasonable time to contact and talk with counsel. If counsel cannot be contacted within a reasonable time, the person may be required to make a decision regarding testing in the absence of counsel." (310 Minn. 421, 247 N. W. 2d 394.)

In this case a telephone call was allowed but a private conference with the attorney was prohibited at the jail. It is undisputed that the attorney arrived promptly at the jail and that a reason-

able time for a conference with his client would not have affected the validity of any test administered thereafter. Under these circumstances, it would be a sham to permit the telephone call and then deny the arrested person an opportunity to consult with his attorney at the jail. The arrested person assumes the risk that his attorney will not appear promptly enough so as to satisfy the reasonable time requirements of Prideaux. However, after permitting the arrested person to telephone his attorney, the police may continue with their routine processing of the individual and the implied-consent form. If the attorney arrives at the jail within a reasonable time so as to not affect the validity of the implied-consent testing, a private consultation between attorney and client must be allowed. After the private conference the arrested person must again be afforded the opportunity to submit to the implied-consent testing.

■ Minn. St. 481.10 provides for a private interview at the place of custody. In State, Dept. of Public Safety, v. Held, 311 Minn. 74, 76, 246 N. W. 2d 863, 864 (1976), in discussing what constitutes a private telephone conversation, we said:

"* * * The issue is whether the police had a further obligation to permit the call to be made from a private booth or room. Bearing in mind that many police departments may not have private phone booths or rooms suitable for such use, and the potential security problems involved, we decline to impose such a requirement. We believe that the driver's rights are sufficiently safeguarded by a rule which forbids the use in evidence of any statements made by defendant to his counsel over the telephone which are overheard by police. Such a rule fully satisfies the privacy requirement of Minn. St. 481.10, the provision on which the Prideaux decision was based."

We apply the same rationale to a private interview. If security permits and a private room is available, it should be provided to counsel. If such a facility is unavailable or impermissible under the circumstances, counsel should be allowed to confer

with his client out of the earshot of others in the room. None of this conversation between the attorney and his client can be used against the defendant, no matter how obtained, unless the defendant agrees to the introduction of such evidence. We regard this as a practical solution to the statutorily imposed requirements of privacy.

We note that the trial court in its memorandum accompanying its order perceptively anticipated our decision in Prideaux and reached the conclusion with which we are in accord. The trial court stated:

"The statute was raised in this case and it should be decided. The statute states that the officer shall admit any resident attorney to a private interview at the place of custody. The only exception made is in cases where imminent danger of escape exists. This was not the case here. Nor was there any possibility in this case that the results of the test would be prejudiced by any delay. The lawyer, it appears, was in the stationhouse and he told the officer that the consultation would only take one or two minutes. The evidence shows clearly that the lawyer was prevented by the officer from having a private interview with his client. Such an action was not only arbitrary and unreasonable, since such a consultation would clearly have had no effect on the validity of the test, but it was also a violation of M. S. A. 481.10 which requires a 'private interview'.

\* \* \* \* \*

"\* \* \* [W]here the lawyer is present as he was in this case and where no prejudice to the test will result M. S. A. 481.10 should be applicable and complied with fully. The statute was not complied with here and that should give the individual involved reasonable grounds for refusing to take the test."

**Affirmed.**