Scott Edward MARTIN,
Petitioner, Respondent,

v.

COMMISSIONER OF PUBLIC.
SAFETY, Appellant.

No. C7-84-635.

Court of Appeals of Minnesota.

Dec. 11, 1984.

Joseph W. Lawver, Robert W. Junghans & Assoc., Edina, for respondent.

Hubert H. Humphrey, III, Atty. Gen., State of Minn., Linda F. Close, Joel A. Watne, Sp. Asst. Attys. Gen., St. Paul, for appellant.

Heard, considered and decided by WOZ-NIAK, P.J., and FORSBERG and LESLIE, JJ.

## OPINION

FORSBERG, Judge.

Following revocation of his driver's license under Minn.Stat. § 169.123 (1982), Scott Edward Martin petitioned for judicial review. After a hearing a district court referee rescinded revocation of Martin's license. The district court affirmed the referee's decision upon the Commissioner's petition for review. The Commissioner appeals from both orders.

## FACTS

Sometime after 1:00 a.m. on February 9, 1984, a baby sitter called her employer because she was concerned about a person in a car parked across the street at 7626 Newton Avenue in Richfield, Minnesota. She said the car had been parked there for about 15 minutes. The parents called the police who sent two officers to the scene.

*Evidence of physical control of the vehicle*

The officers shined a light into the unlit and motionless car and discovered respondent Martin lying across the front seat with his head on the passenger side. They also noticed that an open beer can was sitting on the car's transmission hump. The car engine was not running and the keys were not in the car ignition. Martin sat up and spoke with the officers who asked for his driver's license. He stated that he did not have his license with him but identified himself as Scott Martin. He explained that he was waiting for a woman named Bonnie whom he had met at a bar. The police verified that a woman named Bonnie lived at 7626 Newton Avenue.

The officers observed that Martin showed signs of intoxication and asked him to take a preliminary screening test. Martin did not blow a sufficient specimen for a reading. The officers decided reasonable cause existed to believe Martin had been in physical control of his car while under the influence of alcohol so they took him into custody.

*Martin's consultation with his attorney*

Martin was given the implied consent advisory at the police station. He indicated he understood the advisory and asked to call an attorney. At 2:12 a.m. the police furnished Martin with a telephone which he used to call attorney Joseph Lawver. Lawver and Martin decided that Lawver would promptly go to the police station to counsel Martin and attempt to gain his release. When Martin hung up the phone, he told Officer Maloney his intentions. Maloney promptly called Lawver to tell him that he would not wait for Lawver to arrive and that Martin would have to make his decision immediately. Maloney advised Lawver that Martin would not be released that night but would be transferred to the Hennepin County Adult Detention Center. Maloney permitted Lawver and Martin to confer again on the telephone. Maloney completed the advisory at 2:24 a.m. and Martin refused to submit to a breathalyzer test. At trial Lawver testified that he lived a short distance from the police station and could have been there in 10 minutes.

## ISSUES

1. Did the arresting officer vindicate respondent's right to counsel when he refused to delay completing the implied consent advisory until respondent's attorney arrived at the police station to speak with respondent?

2. Does respondent's presence in his car legally parked on a street with the engine off and the keys not in the ignition establish probable cause to believe he was in physical control of the vehicle?

## ANALYSIS

### I. Right to Counsel

The origin of case law on the limited statutory right to counsel of a person arrested for DWI is *Prideaux v. State, Department of Public Safety,* 310 Minn. 405, 247 N.W.2d 385 (1976).

The *Prideaux* court held:

Consistent with this opinion, any person who is required to decide whether he will submit to a chemical test in accordance with § 169.123 shall have the right to consult with a lawyer of his own choosing before making that decision, provided that such a consultation does not unreasonably delay the administration of the test. The person must be informed of this right, and police officers must assist in its vindication. *The right to counsel will be considered vindicated if the person is provided with a telephone prior to testing and given a reasonable time to contact and talk with counsel.* If counsel cannot be contacted within a reasonable time, the person may be required to make a decision regarding testing in the absence of counsel. The above procedure will ensure an adequate opportunity to consult with counsel without in any substantial way delaying the administration of the test.

*Id.* at 421, 247 N.W.2d at 394 (emphasis added). After *Prideaux* was decided the legislature amended Minn.Stat. § 169.123 to allow a limited right to counsel: "the person has a right to consult with an attorney but * * * this right is limited to the extent that it cannot unreasonably delay administration of the test or the person will be deemed to have refused the test * * *" Minn.Stat. § 169.123, subd. 2(b)(3) (1982). Failure to vindicate this limited right is a reasonable ground for refusing to take a chemical test.

Both *Prideaux* and Minn.Stat. § 169.123, subd. 2(b)(3) specifically limit the right to counsel by requiring it to be exercised without unreasonably delaying chemical testing. This limitation permitted a conference in *State, Department of Public Safety v. Kneisl,* 312 Minn. 281, 251 N.W.2d 645 (1977), but did not permit a conference in *State, Department of Public Safety v. Early,* 310 Minn. 428, 247 N.W.2d 402 (1976). Because concerns with unreasonable delay similar to those in *Early* are present here, we reverse and find Martin's right vindicated.

Martin's position resembles the appellant's position in *Early.* Both drivers were allowed to speak with their attorney by telephone. Neither driver's attorney was present at the police station when the driver was required to decide whether to take the test. Performance of the test would necessarily be delayed not only for the length of the consultation but by the time required for the officer or the lawyer to arrive at the station.

Both this case and *Early* differ from *Kneisl* where the supreme court stated:

It is undisputed that the attorney arrived promptly at the jail and that a reasonable time for a conference with his client would not have affected the validity of any test administered thereafter. Under these circumstances, it would be a sham to permit the telephone call and then deny the arrested person an opportunity to consult with his attorney at the jail. * * * If the attorney arrives at the jail within a reasonable time so as to not affect the validity of the implied-consent testing, a private consultation between attorney and client must be allowed.

*Kneisl,* 312 Minn. at 285–86, 251 N.W.2d at 648–49.

In this case the attorney had not arrived at the police station. The implied consent advisory was complete but for Martin's decision. We will not adopt a rule, as Martin urges, that will require police officers to delay testing for a "reasonable time" while they await an attorney whom a driver claims will arrive in a short time. Such a rule would not only delay testing, but would burden police officers with deciding how long a delay is reasonable. Just as we declined to expand *Kneisl* in *Sturgeon v. Commissioner of Public Safety,* 350 N.W.2d 487 (Minn.Ct.App.

1984), we will not do so here. *See also Shovein v. Commissioner of Public Safety,* 357 N.W.2d 386 (Minn.Ct.App.1984).

## II. Physical Control

 Before the implied consent advisory can be invoked, Minn.Stat. § 169.123 requires that an arresting officer have probable cause to believe that a person has physical control of a motor vehicle while under the influence of alcohol. Here the trial court found the officers had probable cause. That is a factual decision. *Palbicki v. Commissioner of Public Safety,* 347 N.W.2d 512 (Minn.Ct.App.1984). Since an implied consent hearing is a civil matter, the clearly erroneous standard of review applies:

> A reviewing court will not disturb the trial court's findings of fact on appeal, even though it might not agree with them, unless they are clearly erroneous in the sense that they are manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole.

*Dufrane v. Commissioner of Public Safety,* 353 N.W.2d 705, 707 (Minn.Ct.App. 1984).

The meaning of "physical control" has been frequently litigated in varying fact situations. The cases evaluate the issue by examining whether the policy concerns behind the implied consent laws will be served. *State, Department of Public Safety v. Juncewski,* 308 N.W.2d 316 (Minn.1981); *State v. Thurmer,* 348 N.W.2d 776 (Minn.Ct.App.1984).

Martin was found lying in the front seat of his inert car. The keys were not in the ignition but were in his possession. Martin was not parked in his own driveway. He was parked on the street, in front of someone else's home still drinking beer. These facts show Martin continued to be a threat to the public because they indicate Martin might set out on an inebriated journey at any moment. Applying the implied consent statute broadly in favor of public safety, we hold the trial court's finding of physical control is not clearly erroneous.

## DECISION

We reverse the trial court and hold respondent Martin's limited right to an attorney was vindicated.