**Paddy Neal JONES,
Petitioner, Appellant,**

v.

**COMMISSIONER OF PUBLIC
SAFETY, Respondent.**

No. C7–84–1820.

Court of Appeals of Minnesota.

March 26, 1985.

David L. Ayers, Ayers, Riehm & Wood, St. Paul, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Jeffrey S. Bilcik, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by FORSBERG, P.J., and PARKER and LANSING, JJ., with oral argument waived.

## OPINION

LANSING, Judge.

This is an appeal from the district court's order sustaining the Commissioner of Public Safety's revocation of appellant's driver's license for refusal to take a chemical test. We affirm.

## FACTS

Appellant Paddy Jones was stopped by a St. Paul Police officer at about 10:45 p.m. on June 20, 1984. The officer testified that Jones' vehicle was speeding and weaving. Jones contests neither the grounds for the stop nor the presence of reasonable and probable grounds under Minn.Stat. § 169.-123, subd. 2 (Supp.1983), to support the officer's request for chemical testing.

The officer took Jones to the police station, where another officer administered the implied consent advisory, beginning at 11:06 p.m. Jones then asked to call an attorney. He was given a telephone and called attorney Arthur Cheney at 11:10 p.m. Cheney talked with Jones and then with the officer about the circumstances of the stop. According to Cheney, the following exchange occurred between him and the officer:

> Well, at that time I told him I was coming down to see my client, and I was informed that there was a twenty-minute rule imposed by the Ramsey County Judges and I indicated that I was aware of the State Statute that indicated that a test could be taken up to two hours after an arrest and he said he was aware of the statute but they go under the twenty-minute rule and then I looked at my watch and decided I could not make it in that time.

The officer admitted he may have told Cheney he would have to be at the station within 20 minutes. The telephone call with Cheney ended at 11:29 p.m.

Cheney testified that he lived 15 minutes from the police station. Understanding that the 20 minutes had begun to run when the phone call was placed, he did not drive to the station. Neither did he advise Jones to refuse the test.

Jones refused chemical testing, recorded at 11:31 p.m., giving as a reason his "prior record."

## ISSUE

Did appellant have reasonable grounds to refuse a chemical test for intoxication because the attorney he contacted by telephone was given a 20–minute time limit within which to arrive at the police station?

## ANALYSIS

Minnesota has recognized a limited right to counsel for drivers who must decide whether to submit to chemical testing for blood alcohol content. The right was first recognized in *Prideaux v. State, Department of Public Safety*, 310 Minn. 405, 247 N.W.2d 385, 391 (1976), and was based on the general statutory right of a restrained person to consult an attorney set forth in Minn.Stat. § 481.10 (1982). *See Prideaux*, 310 Minn. at 414–15, 247 N.W.2d at 391. After *Prideaux*, the legislature amended the implied consent provision to provide that a driver deciding whether to submit to chemical testing must be informed

> that the person has a right to consult with an attorney but that this right is limited to the extent that it cannot unreasonably delay administration of the test or the person will be deemed to have refused the test * * *.

Minn.Stat. § 169.123, subd. 2(b)(3) (Supp. 1983).[1]

Failure by the arresting officers to vindicate this right is considered a reasonable ground for refusing to take a chemical test. *See, e.g., Prideaux*, 310 Minn. at 422, 247 N.W.2d at 395; *Martin v. Commissioner of Public Safety*, 358 N.W.2d 734 (Minn.Ct.App.1984).

Here, Jones' attorney was informed that he had 20 minutes to arrive at the station before his client would be deemed to have refused the test. Because of this time restraint, he did not go to the station. Our determination of whether Jones' refusal to take the test was reasonable turns on whether this time restraint improperly burdened Jones' right to counsel.

Jones relies on the Minnesota Supreme Court's decision in *State, Department of Public Safety v. Kneisl*, 312 Minn. 281, 251 N.W.2d 645 (1977), where the court held that a private in-person conference with an attorney must be allowed if a secure, private facility is available and "[i]f the attorney arrives at the jail within a reasonable time so as to not affect the validity of the implied-consent testing." *Id.* at 286, 251 N.W.2d at 649.

The facts of *Kneisl*, however, differ from the present situation. In *Kneisl* the attorney telephoned by the accused 30 minutes earlier was present at the jail when the private consultation was refused. Under those facts, the court stated that

> it would be a sham to permit the telephone call and then deny the arrested person an opportunity to consult with his attorney at the jail.

*Id.* at 286, 251 N.W.2d at 648.

Jones' fact situation, in contrast, is more comparable to the driver's in *Martin v. Commissioner of Public Safety*, 358 N.W.2d 734 (Minn.Ct.App.1984), where an attorney, telephoned by the driver, had not yet arrived at the station. This court determined in *Martin* that the police need not delay testing while awaiting the arrival of an attorney, stating:

---

1. The legislature recently amended Minn.Stat. § 169.123, subd. 2(b). It now provides that, effective August 1, 1984, the driver must be informed that *"after submitting to testing,* the

person has the right to consult with an attorney." 1984 Minn.Laws ch. 622, § 10 (emphasis added).

Such a rule would not only delay testing, but would burden police officers with deciding how long a delay is reasonable. *Id.* at 736.

The right to counsel is effectuated "if the person is provided with a telephone prior to testing and given a reasonable time to contact and talk with counsel." *Prideaux*, 310 Minn. at 421, 247 N.W.2d at 394.

Here, Jones was given a telephone and "a reasonable time to contact and talk with counsel." Under *Prideaux*, his right to counsel was vindicated at that point. He therefore had no reasonable basis to refuse to take the test.

### DECISION

Affirmed.