**Donald Anthony KUHN, Petitioner, Respondent,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Appellant.**

**No. C0-92-103.**

Court of Appeals of Minnesota.

Aug. 11, 1992.

Review Denied Oct. 20, 1992.

Faison T. Sessoms, Minneapolis, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Joel A. Watne, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Considered and decided by AMUNDSON, P.J., and PARKER and KALITOWSKI, JJ.

## OPINION

AMUNDSON, Judge.

This is an appeal from an order rescinding the Commissioner of Public Safety's revocation of Donald Anthony Kuhn's driver's license. The referee recommended, and the trial court approved, rescinding the revocation on the ground Kuhn was denied the reasonable opportunity to have counsel before submitting to a chemical test. We affirm.

## FACTS

At 1:30 a.m., on August 12, 1991, Donald Kuhn was stopped by Officer Todd Hinz and at 1:43 a.m. placed under arrest for driving under the influence. At 2:00 a.m., Kuhn was taken to the St. Louis Park police station where Officer Hinz read Kuhn the Minnesota Implied Consent Advisory. The Advisory provides:

> Before making your decision about testing, you have the right to consult with an attorney. If you wish to do so, a telephone will be made available to you. If you are unable to contact an attorney, you must make a decision on your own. You must make your decision within a reasonable time.

Kuhn requested an attorney. At 2:02 a.m., Kuhn was given a telephone and yellow-pages phone book. Hinz sat in the room while Kuhn called. Hinz testified that Kuhn tried to contact an attorney three times, that he wasn't faking or stalling, and that after 24 minutes, when Kuhn had failed to contact an attorney, Hinz said, "Look, you got to take the test now." Kuhn submitted to a test which disclosed an alcohol concentration of .24.

Hinz's testimony at the implied consent hearing indicated the booking sergeant, not Hinz, decided that Kuhn needed to take the test at that time. Further, Hinz was not aware of any policy in the St. Louis Park Police Department that permitted a specific amount of time to contact an attorney.

After Hinz's testimony at the hearing, the referee asked if Kuhn's attorney would like to make a motion; Kuhn's attorney moved to rescind the license revocation. The referee asked whether the motion was based on Kuhn's inability to contact counsel, and Kuhn's attorney said "yes." The referee granted the motion, concluding the Commissioner failed to show by the prepon-

derance of the evidence that Kuhn was afforded a reasonable opportunity to consult with an attorney before submitting to the test. The trial court approved the referee's findings of fact, conclusions of law and order to rescind the revocation of Kuhn's license. This appeal followed.

## ISSUE

Did the trial court correctly determine respondent was denied the right to counsel?

## I.

### A. Standard of Review

■ The critical issue we face is whether the police accorded Kuhn a reasonable opportunity to consult with an attorney before submitting to chemical testing for blood alcohol. Our first inquiry is the proper standard of review in this case. Kuhn contends the issue should be reviewed under a clearly erroneous standard. We disagree. Here the Commissioner does not dispute the findings of fact. Instead, the Commissioner claims the correct standard is whether the trial court erred in applying the law to the facts. We agree. Accordingly, it is a legal determination whether Kuhn was accorded a reasonable opportunity to consult with counsel based on the given facts. *Cf. Berge v. Commissioner of Pub. Safety*, 374 N.W.2d 730, 732 (Minn.1985) (where uncontradicted testimony exists, the reviewing court should determine whether, as a matter of law, an objective basis for an investigatory stop existed).

### B. Right to Counsel

■ The Minnesota Constitution gives Kuhn a limited right to consult an attorney before deciding whether or not to submit to chemical testing for blood alcohol. Minn. Const. art. 1, § 6; *Friedman v. Commis-*

*sioner of Pub. Safety*, 473 N.W.2d 828, 835 (Minn.1991). Because of the "evanescent nature" of the evidence in DWI cases, the accused is accorded a limited amount of time to contact an attorney. *Id.* In other words, there is a right to consult with an attorney

provided that such consultation does not unreasonably delay the administration of the test. The person must be informed of this right, and the police officers must assist in its vindication. The right to counsel will be considered vindicated if the person is provided with a telephone prior to testing and given a reasonable time to contact and talk with counsel. If counsel, cannot be contacted within a reasonable time, the person may be required to make a decision regarding testing in the absence of counsel.

*Id.* (quoting with approval *Prideaux v. State, Dept. of Pub. Safety*, 310 Minn. 405, 421, 247 N.W.2d 385, 394 (1976)). When a driver is coerced into making a complicated decision without the assistance of counsel, he should not be bound by the decision, since he might have otherwise made it differently. Under such circumstances, if the driver elected to take the chemical test, the results should be suppressed. *Prideaux*, 310 Minn. at 422, 247 N.W.2d at 395.

Between 1976 and 1984 several appellate decisions construed the boundaries of an individual's statutory right to consult with an attorney before submitting to chemical testing.[1] The seminal case is *Prideaux v. State, Dep't of Pub. Safety*, 310 Minn. 405, 419, 247 N.W.2d 385, 393 (1976) in which the supreme court ruled there was a statutory right to an attorney before submitting to chemical testing. Later, in *Friedman*, where the majority of the supreme court concluded a right to counsel under the Minnesota Constitution existed, the court

1. In *Prideaux v. State, Dept. of Pub. Safety*, 310 Minn. 405, 247 N.W.2d 385 (1976), the supreme court held Minn.Stat. § 481.10 gives a driver arrested for DWI a limited statutory right to consult counsel before deciding whether to submit to chemical testing. The legislature signified its agreement with the *Prideaux* holding by including in the implied consent advisory a statement that the driver had a limited right to

consult with an attorney. Later, in 1984 the legislature amended the advisory, adding a statement that "after submitting to testing" the driver has a right to consult with an attorney. Subsequently, the supreme court held in *Nyflot v. Commissioner of Pub. Safety*, 369 N.W.2d 512, 515 (Minn.1985) that a driver has no federal constitutional right to counsel before deciding whether to submit to chemical testing.

stated the dictum in *Prideaux* "made clear" what the court felt about a driver's constitutional rights. *Friedman*, 473 N.W.2d at 836. Consequently, it is appropriate to look at decisions based on the statutory right to counsel set out in *Prideaux* and its progeny for guidance in determining the boundaries of the Minnesota constitutional right to consult with an attorney before submitting to chemical testing.

In *State, Dept. of Pub. Safety v. Early*, 310 Minn. 428, 431, 247 N.W.2d 402, 403 (1976), the supreme court held that where the defendant was taken to the police station, allowed to call his attorney, but based on his attorney's advice, did not take the chemical test, the defendant's right to counsel was vindicated. The court also held the police did not have to give the defendant a test upon the attorney's request, following the attorney's arrival at the police station, "some 30 minutes" after the defendant's initial refusal. *Id.*; *see also Martin v. Commissioner of Pub. Safety*, 358 N.W.2d 734, 736 (Minn.App. 1984) (officers need not delay testing to wait for the arrival of defendant's attorney); *Jones v. Commissioner of Pub. Safety*, 364 N.W.2d 854, 857 (Minn.App.1985) (waiting for an attorney's arrival at the police station would burden officers with deciding how long a delay is reasonable).

In *Eveslage v. Commissioner of Pub. Safety*, 353 N.W.2d 623 (Minn.App.1984), the defendant was taken to the police station, was provided with a telephone and directory, and tried to call his attorney but was unsuccessful. There was no one else he wished to call. He was advised if he was unable to reach an attorney, he would have to make his own decision. He refused. The trial court held the officers failed to vindicate defendant's right to counsel. This court reversed, concluding giving the defendant the opportunity to call his attorney, satisfied the right to counsel. *Id.* at 627.

In *Saxton v. Commissioner of Pub. Safety*, 355 N.W.2d 769 (Minn.App.1984), the defendant asked to call an attorney, was taken to the police station, was given a telephone book, and called his wife and his employer. After failing to contact an attorney, the defendant asked the officer what he should do, and the officer said he could not advise the defendant. The defendant refused chemical testing. The trial court rescinded revocation of the defendant's license, but this court reversed, concluding the defendant's right to counsel was vindicated and that the police officer did not have to suggest calling a specific attorney or public defender. *Id.* at 771.

In *Shovein v. Commissioner of Pub. Safety*, 357 N.W.2d 386 (Minn.App.1984), the defendant was allowed to use a telephone booking room to call an attorney; he reached an attorney and then requested privacy to talk to him. This court held the defendant's right to counsel was vindicated, concluding the extent of privacy afforded a defendant in conferring with an attorney turns on the security of the available facilities. *Id.* at 388; *see also State, Dep't of Pub. Safety v. Kneisl*, 312 Minn. 281, 286, 251 N.W.2d 645, 649 (1977) (if security permits, and the officer arrives at the jail within a reasonable time, then a private conference with the attorney must be granted).

While these cases provide some guidance on several facets of the right-to-an-attorney issue, they do not delineate what amount of time constitutes a reasonable opportunity to contact and consult with an attorney. Moreover, they are factually distinguishable from this case. In the cases described above either an attorney was in fact contacted and the driver requested more—the police either wait for the attorney's arrival at the police station or provide the driver a private room in which to confer with the attorney—or an attorney was not contacted and the driver either refused to contact attorneys other than his own or gave up trying. Plainly, once a driver contacts an attorney, the driver's consultation with the attorney can be accomplished by telephone as easily as in person. Further, refusing to try to contact more than one attorney or giving up trying to contact an attorney is fundamentally different than making a continued good-faith effort to reach an attorney. Simply put, the police vindicated the

driver's right to consult with counsel in the above cases because the driver either chose to stop calling or did in fact consult with an attorney. That is not the case here however.

The Commissioner's position is simple: it urges this court to hold as a matter of law that allowing 24 minutes to call an attorney is sufficient in itself to vindicate Kuhn's limited right to counsel. As a practical matter, there is a certain time period—the Commissioner states about 20 minutes—during which preparation for the chemical test would take place. The Commissioner contends this period reflects a proper balance between permitting a reasonable time for a driver to contact an attorney and preventing unnecessary delay in the administration of the test. The Commissioner also argues society has a strong interest in allowing police officers to perform their other duties; the shorter the delay in administering the test, the sooner the officer can be "back on the street." While these arguments are not without merit, we believe the limited constitutional right to consult with an attorney, provided the test is not unreasonably delayed, is no less compelling. *Cf. Friedman*, 473 N.W.2d at 835 (the citizen's right embodied in the Minnesota Bill of Rights cannot be overridden for temporary expediency in building statistics). Consequently, we conclude that basing the "reasonable" time criteria on a specific number of elapsed minutes alone is improper.

Then what factors have a bearing on what amounts to a reasonable time? We propose no definite or exclusive set of factors. We recognize, however, the relevant factors focus both on the police officer's duties in vindicating the right to counsel and the defendant's diligent exercise of the right. Within this context, we believe as a threshold matter the driver must make a good faith and sincere effort to reach an attorney. The undisputed evidence in this case was that Kuhn made a sincere effort to call and consult with an attorney. There is nothing in the record, in other words, to indicate Kuhn was using delaying tactics or decided on his own to stop trying to reach an attorney.

A second factor involves the time of day when the driver tries to contact contact an attorney. A driver should be given more time in the early morning hours when contacting an attorney may be more difficult. Here Kuhn was trying to contact an attorney at 2:03 a.m. on a Monday morning when presumably attorneys are not readily available. Third, the length of time the driver has been under arrest is important because the longer he is under arrest the less probative value the chemical test may ultimately have. Here Kuhn was arrested at 1:30 a.m. and took the test at 2:27 a.m.; this one hour delay does not by itself require a driver to submit to a chemical test. We reiterate that these factors are not exclusive. Yet under the unique circumstances of this case, we agree with the trial court that the police did not accord Kuhn a reasonable opportunity to contact and consult with counsel before submitting to the chemical test.

### DECISION

Kuhn's limited right to contact and consult with counsel under the Minnesota Constitution, Minn. Const. art. 1, § 6, was not vindicated in this case and therefore rescission of Kuhn's driver's license revocation was proper.

Affirmed.

KALITOWSKI, Judge, dissenting.

I respectfully dissent. I agree we cannot say as a matter of law that 24 minutes is always a reasonable amount of time for a driver to consult with counsel. However, under the facts of this case there is no evidence to support a legal conclusion that the St. Louis Park Police did not give respondent a sufficient amount of time to vindicate his right to counsel under the Minnesota Constitution.

The police went beyond the minimum requirements for assisting in the vindication of the right to counsel by providing respondent with both a telephone and a yellow pages telephone directory. *See*

*Friedman v. Commissioner of Pub. Safety,* 473 N.W.2d 828, 835 (Minn.1991). The record contains no evidence as to why respondent was unable to contact an attorney or as to when, if ever, he would consult with counsel. Absent such evidence, it was not unreasonable for the police, after 24 minutes, to require respondent to make a decision regarding testing without consulting counsel.