**Melvin D. CAMPBELL, Petitioner, Appellant,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

**No. C0–92–540.**

Court of Appeals of Minnesota.

Sept. 1, 1992.

Review Granted Oct. 20, 1992.

Donald H. Nichols, Paul J. Lucas, Nichols, Kaster & Anderson, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Jacquelyn E. Albright, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by RANDALL, P.J., and KALITOWSKI and KLAPHAKE, JJ.

## OPINION

KLAPHAKE, Judge.

Appellant Melvin D. Campbell's driver's license was revoked pursuant to the implied consent law. He petitioned for judicial review, and the trial court sustained the revocation. Campbell appeals and we reverse.

## FACTS

On October 22, 1991, at 12:20 a.m., Police Officer Brian Koch investigated a car-deer accident on Highway 101. Koch eventually placed appellant Melvin Campbell under arrest for driving while under the influence, and transported him to the police department.

Koch read Campbell the implied consent advisory at approximately 1:06 a.m. in a hallway outside the booking room. When Campbell indicated he wished to consult with counsel, Koch provided him access to a telephone and telephone books inside the booking room in accordance with department procedure. From 1:16 a.m. to 1:25 a.m., Campbell used the telephone in the booking room to consult with an attorney. During this period, Koch stood approximately five to six feet away from Campbell, but testified he did not listen to Campbell's conversation. Koch explained he allowed Campbell to use the booking room because a secure private room was unavailable. Koch stated he remained in the booking room because it contained a TV, a VCR and an Intoxilyzer, and because he was observing Campbell prior to administering the Intoxilyzer test.

Campbell took the Intoxilyzer test and his driver's license was revoked pursuant to the implied consent law. He petitioned for judicial review. The trial court sustained the revocation, holding in relevant part that Campbell was given a reasonable opportunity to consult with counsel, and was not prejudiced. Campbell appeals.

## ISSUE

Did Koch violate Campbell's right to counsel under Minn. Const. art. 1, § 6 by failing to allow him to consult privately with an attorney?

## ANALYSIS

The Minnesota Supreme Court recently held that under Minn. Const., art. I, § 6, "an individual has the right, upon request, to a reasonable opportunity to obtain legal advice before deciding whether to submit to chemical testing." *Friedman v. Commissioner of Pub. Safety*, 473 N.W.2d 828, 835 (Minn.1991). Campbell contends that because he was not allowed private consultation with an attorney, he was not given a reasonable opportunity to consult with counsel.

Under law prior to *Friedman*, drivers had a statutory right to counsel. *See Prideaux v. State, Dep't of Pub. Safety*, 310 Minn. 405, 419, 247 N.W.2d 385, 393 (1976). This statutory right to counsel protected the privacy of a driver's consultation with an attorney. *State v. Kieley*, 413 N.W.2d 886, 888 (Minn.App.1987) (videotaping part of driver's telephone call to an attorney). The supreme court imposed a privacy requirement to the extent of suppressing any statements overheard by police. *State, Dep't of Pub. Safety v. Held*, 311 Minn. 74, 76, 246 N.W.2d 863, 864 (1976).

In *Friedman*, the supreme court recognized a state constitutional right to consult with an attorney before deciding whether to submit to chemical testing. *Friedman*, 473 N.W.2d at 833; *see* Minn. Const. art. 1, § 6. The *Friedman* court held that the decision whether to submit to testing is a "critical stage" of the proceeding, during which the driver is entitled to the advice of counsel. *Id.* This constitutional right to counsel, like the former statutory right,

includes the right to private consultation, or at least as private a setting as circumstances will allow. *Cf. Held,* 311 Minn. at 76, 246 N.W.2d at 864 (discussing limited resources available to municipalities to provide privacy to drivers contacting counsel). A recent panel of this court has held, however, that the right is safeguarded by the exclusion of any overheard conversations. *State v. Ella,* No. C3–92–161, 1992 WL 122660 (Minn.App. June 9, 1992), *pet. for rev. denied* (Minn. Aug. 4, 1992). We disagree because *Ella* relied solely on cases involving the prior statutory right.

The United States Supreme Court held as to the Sixth Amendment right to counsel that "when conversations with counsel have been overheard, the constitutionality of the conviction depends on whether the overheard conversations have produced, *directly or indirectly,* any of the evidence offered at trial." *Weatherford v. Bursey,* 429 U.S. 545, 552, 97 S.Ct. 837, 842, 51 L.Ed.2d 30 (1977) (emphasis added). The overheard conversation between Campbell and his attorney indirectly produced the Intoxilyzer test results offered against him. The fact that this evidence was more directly produced by Campbell's own decision is immaterial because the officer's presence affected the very conversation in which that decision was made. Unlike in *Weatherford,* 429 U.S. at 554, 97 S.Ct. at 843, where the defendant did not know the informant participating in the conversation was an undercover agent, Campbell knew an officer was listening to his conversation with his attorney. With that knowledge, he may not have been able to answer, or answer candidly, all pertinent questions his attorney asked. The police officer's opportunity to eavesdrop on Campbell's conversation with his attorney prejudiced Campbell.

We emphasize that the police officer was present not merely during pretrial preparations, but during a "critical stage" of the prosecution. *Cf. State v. Rainer,* 411 N.W.2d 490, 494–95 (Minn.1987) (presence of state's expert during defense expert's tests did not violate Sixth Amendment). The overheard telephone conversation was, presumably, the basis upon which Campbell made the critical decision to submit to testing. This decision was infected from the beginning if Campbell could not be candid with counsel. Moreover, it is difficult to see how a driver discussing the factors most relevant to the testing decision in the presence of police would not "risk a potentially crippling revelation." *Id.* at 494 (quoting *State v. Mingo,* 77 N.J. 576, 582, 392 A.2d 590, 592 (1978)).

We recognize that *Held,* 311 Minn. at 76, 246 N.W.2d at 864, discussed the limited resources available to municipalities in providing privacy to counsel. If no secure, private room is available, a telephone with an extension cord, which could allow the suspect to move out of hearing range of the police officers, would afford reasonable privacy. *See State, Dep't of Pub. Safety v. Kneisl,* 312 Minn. 281, 251 N.W.2d 645, 649 (1977). While a suspect may not be entitled to a private room either because one is unavailable or because police need to observe an accused before administering an Intoxilyzer test, the police, at a minimum, must not eavesdrop on the suspect's conversation or otherwise inhibit a frank discussion between the suspect and attorney. Here, the officer's choice of making only the booking room available and then remaining in the room did not afford Campbell reasonable privacy in which to consult with counsel.

## DECISION

The order of the trial court sustaining the driver's license revocation is reversed.

Reversed.