*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A13-2092**

State of Minnesota,
Respondent,

vs.

Ronald Earle Menzie,
Appellant.

**Filed December 1, 2014**
**Affirmed**
**Smith, Judge**

Hennepin County District Court
File No. 27-CR-12-17521

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Lee W. Barry, Assistant County Attorney, Elizabeth R. Johnston, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer Workman Jesness, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Ross, Presiding Judge; Schellhas, Judge; and Smith, Judge.

UNPUBLISHED OPINION

**SMITH**, Judge

We affirm appellant's conviction of first-degree driving while impaired because appellant tacitly consented to a breath test and because the prosecutor's improper references to appellant's prior bad acts did not affect appellant's substantial rights.

## FACTS

In the early morning hours of June 4, 2012, a Minnesota State Trooper observed a minivan on a freeway with its turn signal flashing. The minivan did not turn or change lanes as indicated by its turn signal, but the trooper did observe it drifting back and forth in its lane, touching both lane lines. The trooper activated his emergency lights, and, after about 30 seconds, the minivan stopped. The trooper identified the driver as appellant Ronald Menzie. While speaking to Menzie, the trooper smelled "a strong odor of alcoholic beverage coming from the vehicle." He directed Menzie to exit the minvan and stand behind it. Menzie denied having consumed any alcohol during the evening.

After Menzie informed the trooper that he was blind in one eye, the trooper abandoned his plan to conduct a horizontal gaze nystagmus test. Instead, he conducted a one-legged stand test, first explaining and demonstrating the test for Menzie. After some hesitation, Menzie agreed to perform the test, and the trooper observed that "[h]e performed pretty well."

The trooper also had Menzie perform the walk-and-turn test, again explaining the test and demonstrating it for Menzie. The trooper observed three indicators of impairment in Menzie's performance of the walk-and-turn test. The trooper then arrested

Menzie and transported him to jail. At the jail, the trooper read Menzie the Minnesota Implied Consent Advisory. Menzie attempted to contact an attorney, using a telephone and directories provided by the arresting police officer, but gave up after approximately 15 minutes.

The trooper asked Menzie if he would take a breath test, but Menzie responded, "I don't know." The trooper explained the test, started the testing machine, and gave Menzie the mouthpiece. Menzie provided a 1.54-liter breath sample. The test results showed an alcohol concentration of .131 and .134. Menzie also provided a second 1.73-liter breath sample, and the test results showed an alcohol concentration of .131 and .133. The state charged Menzie with first-degree driving while impaired.

Before trial, Menzie moved to suppress the breath-test results, arguing that they were the product of an unconstitutional warrantless search. After noting that the motion was essentially identical to other suppression motions before various district courts in the aftermath of the United States Supreme Court's *McNeely* decision,[1] the district court denied the motion.

During a jury trial, the district court admitted a certified copy of Menzie's driving record over his hearsay and confrontation-clause objections. Menzie's driving record indicated "three prior alcohol-related driver's license revocations."

Menzie testified in his own defense, stating that he had had only two drinks of insufficient size to become intoxicated and that he had not been truthful about drinking when the trooper asked. He also admitted having been convicted of a felony eight years

---

[1] *Missouri v. McNeely*, 133 S. Ct. 1552 (2013).

3

previously, but responded to the prosecutor's inquiry about a 15-year-old conviction by stating that he did not remember. When he testified that "[a]ll my felony convictions [are] from . . . getting harassed by the police," the prosecutor asked whether he recalled an encounter with the police on September 18, 2011 and whether he recalled "leaving after two days of a jury trial" in a criminal case resulting from that encounter. Menzie denied any recollection of these events. The prosecutor asked Menzie about a warrant issued for his arrest because of that purported flight, but Menzie refused to confirm it. Menzie's counsel objected at the beginning of this series of questions, but the district court overruled the objection.

The prosecutor also asked Menzie whether his driver's license had been revoked for driving under the influence, and Menzie stated that he had not possessed a driver's license for over 20 years because of the police "pulling [him] over a thousand times." When the prosecutor confronted him with his certified driving record, he stated that it was false information.

During his closing argument, the prosecutor referenced Menzie's purported flight from previous court hearings three times, including an implication that the allegation could be proved by reference to information in official records. The prosecutor also stated that Menzie had been convicted of test-refusal in 2000. Menzie's counsel did not object to any of these references.

The jury returned a guilty verdict, and it responded to special verdict questions by finding that Menzie had three "qualified impaired driving incidents within 10 years immediately preceding the current offense." The district court sentenced Menzie to 72

4

months' imprisonment, the presumptive sentence under the Minnesota Sentencing Guidelines.

## D E C I S I O N

### I.

Menzie contends that the district court erred by refusing to suppress his breath test results. The federal and state constitutions protect citizens against unreasonable warrantless searches. U.S. Const. amend. IV; Minn. Const. art. I, § 10. A breath test is a search. *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 616-17, 109 S. Ct. 1402, 1413 (1989). "But police do not need a warrant if the subject of the search consents." *State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013), *cert. denied* (134 S. Ct. 1799 (U.S. 2014)). "For a search to fall under the consent exception, the State must show by a preponderance of the evidence that the defendant freely and voluntarily consented." *Id.* "Whether consent is voluntary is determined by examining the totality of the circumstances." *Id.* (quotation omitted).

Although Menzie concedes that he consented to the search by providing breath samples, he argues that his consent was not voluntary because the police officer coerced him by reading the implied consent advisory and then handing him the breath-testing mouthpiece even though Menzie had expressed uncertainty about whether to consent and had been unable to reach an attorney. The Minnesota Supreme Court has expressly rejected the notion that the implied-consent advisory is unconstitutionally coercive. *See id.* at 569-72. The supreme court has also noted that merely submitting to a breath test is an indication that the subject consented. *See id.* at 572 ("[T]he fact that someone submits

5

to a search after being told that he or she can say no to the search supports a finding of voluntariness.").

Menzie's inability to reach an attorney did not undermine his consent. Although consultation with an attorney "reinforces" a finding of consent, *id.* at 571, Minnesota law requires only that an individual be given the opportunity to attempt to reach an attorney; it does not require that they succeed, *see Friedman v. Comm'r of Pub. Safety*, 473 N.W.2d 828, 835 (Minn. 1991) ("The right to counsel will be considered vindicated if the person is provided with a telephone prior to testing and given a reasonable time to contact and talk with counsel. If counsel cannot be contacted within a reasonable time, the person may be required to make a decision regarding testing in the absence of counsel." (quotation omitted)); *see also Kuhn v. Comm'r of Pub. Safety*, 488 N.W.2d 838, 842 (Minn. App. 1992) ("[T]he relevant factors [for determining whether an individual has been given reasonable time to contact an attorney] focus on *both* the police officer's duties in vindicating the right to counsel *and* the defendant's diligent exercise of the right." (emphasis added)), *review denied* (Minn. Oct. 20, 1992). Here, Menzie was given an opportunity to contact an attorney, but he abandoned his attempts after 15 minutes. We therefore conclude that, when viewing the totality of the circumstances, Menzie voluntarily consented when he abandoned his attempts to reach an attorney and provided breath samples.

**II.**

Menzie argues that the prosecutor committed reversible misconduct by repeatedly referring to inadmissible prior bad acts. Although he objected to the prosecutor's initial

6

line of questioning, Menzie did not object to the prosecutor's continuing references to Menzie's purported flight to avoid court hearings. We apply a modified plain-error review to claims of unobjected-to prosecutorial misconduct. *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). The defendant bears the burden to "demonstrate both that error occurred and that the error was plain." *Id.* "An error is plain if it . . . contravenes case law, a rule, or a standard of conduct." *Id.* (quotation omitted). "[W]hen the defendant demonstrates that the prosecutor's conduct constitutes an error that is plain, the burden would then shift to the state . . . to show that there is no reasonable likelihood that the absence of the misconduct in question would have had a significant effect on the verdict of the jury." *Id.* (quotation and citations omitted).

Menzie contends that the prosecutor's repeated questioning and references during closing arguments to the allegation that Menzie had fled from a previous prosecution was plain error. A prosecutor's arguments "must be based on the evidence produced at trial, or the reasonable inferences from that evidence." *State v. Porter*, 526 N.W.2d 359, 363 (Minn. 1995). "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person to show that the person acted in conformity therewith on a particular occasion." *State v. Ness*, 707 N.W.2d 676, 685 (Minn. 2006) (citing Minn. R. Evid. 404(b)). "Further, such evidence may not be introduced if its probative value is substantially outweighed by its tendency to unfairly prejudice the factfinder." *Id.* (citing Minn. R. Evid. 403). When the state seeks to introduce prior-bad-acts evidence, it must provide notice, "clearly indicate what the evidence will be offered to prove," show "clear and convincing evidence that the defendant participated in the prior act," demonstrate

7

that the evidence is "relevant and material to the state's case," and the district court must determine that the probative value of the evidence is not "outweighed by its potential prejudice to the defendant." *Id.* at 686.

The prosecutor here met none of the requirements for introducing evidence that Menzie had fled from a prior prosecution. He provided no notice of an intention to introduce evidence of Menzie's purported flight, he did not explain the purpose of the evidence or show how such evidence would be relevant to the state's case, and he produced no evidence at all—let alone clear and convincing evidence—to counter Menzie's denials. In the absence of evidence, the prosecutor resorted to insinuations of evidence, implying that proof could be found in state databases by typing in Menzie's name.

The state contends, however, that the prosecutor was allowed to inquire into Menzie's purported flight from a prior prosecution as part of its efforts to show three qualifying prior impaired driving incidents. It cites caselaw supporting the state's right to show a defendant's guilt by pointing to flight to avoid prosecution as evidence of consciousness of guilt. *See, e.g.*, *State v. McDaniel*, 777 N.W.2d 739, 746 (Minn. 2010); *State v. McTague*, 190 Minn. 449, 453, 252 N.W. 446, 448 (1934). But the cases the state cites permit the state to use evidence of flight to show consciousness of guilt for a *present* offense, not a *prior* offense.[2] Moreover, the state did not need to show

---

[2] The state asserts that the prosecutor was permitted to introduce *both* evidence of Menzie's flight to avoid the prior prosecution and Menzie's flight to avoid the present prosecution by failing to appear for his initial trial date. Although he objected to the question on relevance grounds at the initial trial, Menzie does not challenge the

consciousness of guilt of an offense to meet its burden to show qualified prior impaired driving incidents because that burden could be met solely through introduction of Menzie's driving record, showing three prior license revocations for driving while under the influence of alcohol. *See* Minn. Stat. § 169A.03, subds. 21, 22 (2012) (defining "qualified impaired driving incident" to include alcohol-related administrative license revocations).

The state also argues that the prosecutor was permitted to impeach Menzie's credibility by pointing to his purported prior flight to avoid prosecution after Menzie denied knowledge of any other license-revocation proceedings. But although the Minnesota Rules of Evidence allow for questions on such matters during cross-examination, they prohibit any party from introducing extrinsic evidence of prior bad acts other than criminal convictions to impeach the credibility of testifying witnesses. *See* Minn. R. Evid. 608(b). No evidence appears in the record that Menzie had been convicted of fleeing to avoid prosecution. Since the prosecutor's closing arguments "must be based on the evidence produced at trial, or the reasonable inferences from that evidence," *Porter*, 526 N.W.2d at 363, the prosecutor exceeded his bounds by repeatedly referencing Menzie's purported flight during his closing argument.

Menzie also argues—and the state concedes—that the prosecutor plainly erred by referring to Menzie's prior test-refusal conviction from 2000. But the state argues that

prosecutor's question about his purported failure to appear for the initial trial date. And whatever the merits of questioning about an initial failure to appear for the current trial, they are irrelevant to the question of whether the prosecutor was permitted to question Menzie about an alleged failure to appear in a *previous* trial.

this error and any error in the prosecutor's references to Menzie's purported flight to avoid a previous prosecution did not affect Menzie's substantial rights. To determine whether there is a reasonable likelihood that misconduct affected the jury's verdict, "we consider the strength of the evidence against the defendant, the pervasiveness of the improper suggestions, and whether the defendant had an opportunity to (or made efforts to) rebut the improper suggestions." *State v. Davis*, 735 N.W.2d 674, 682 (Minn. 2007).

We find it implausible that the prosecutor's errors affected the verdict. As Menzie's counsel conceded during oral argument, the evidence against Menzie was overwhelming. The trooper conducted a proper stop after observing Menzie weaving. The trooper obtained a consensual breath sample indicating that Menzie was under the influence of alcohol. And Menzie's driving record showed three prior alcohol-related license revocations. These facts alone support each of the elements of Menzie's conviction, and it is unlikely that the prosecutor's improper "digs" to Menzie's purported flight or his isolated reference to a 2000 test-refusal conviction had any effect on the jury's deliberations. We therefore conclude that the prosecutor's misconduct did not affect the verdict, and we decline to reverse Menzie's conviction.

We nevertheless use this opportunity to admonish the prosecutor for his egregious misconduct. "[A] prosecutor is a minister of justice whose obligation is to guard the rights of the accused as well as enforce the rights of the public." *Ramey*, 721 N.W.2d at 300 (quotation omitted). "We expect that prosecutors . . . are aware of our case law proscribing particular conduct." *Id.* at 301. Caselaw clearly establishes that a prosecutor commits misconduct "by means of insinuations and innuendoes which plant in the minds

of the jury a prejudicial belief in the existence of evidence which is otherwise inadmissible." *State ex rel. Black v. Tahash*, 280 Minn. 155, 157, 158 N.W.2d 504, 506 (1968). The prosecutor here at least three times referred to inadmissible evidence that Menzie had fled from previous court proceedings. His insinuation that this inadmissible evidence could be easily confirmed in state law-enforcement databases was particularly reprehensible. Although we decline to reverse Menzie's conviction, we share the sentiments expressed in *State v. Merrill*, where the supreme court deplored "unfortunate, inexplicable, and, even worse, totally unnecessary" conduct of the prosecutor and warned that future instances might compel the courts to consider reversal in the exercise of their supervisory powers. 428 N.W.2d 361, 372-73 (Minn. 1988). As in *Merrill*, the overwhelming evidence of the defendant's guilt makes the prosecutor's misconduct more concerning, not less. Our holding should therefore not be misunderstood as condoning the prosecutor's conduct. Justice deserves better.

Menzie also raises numerous additional arguments in a lengthy pro se supplemental brief. To the extent that these arguments differ from those already addressed, we have carefully considered them and hold that none of them warrants reversal.

**Affirmed.**