*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1505**

State of Minnesota,
Respondent,

vs.

Elizabeth Ellen Hartneck,
Appellant.

**Filed June 6, 2016
Affirmed
Ross, Judge**

Hennepin County District Court
File No. 27-CR-13-27038

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Elizabeth R. Johnston, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Rory P. Durkin, Mark G. Giancola, Jonathan D. McGrath, Giancola-Durkin, P.A., Anoka Minnesota (for appellant)

        Considered and decided by Reyes, Presiding Judge; Ross, Judge; and Smith, Tracy, Judge.

UNPUBLISHED OPINION

**ROSS**, Judge

Elizabeth Hartneck submitted to a breath test after police arrested her for drunk driving, and she was convicted based on the test results. Hartneck challenges the district court's reliance on those results because, she argues, the testing officers failed to vindicate her limited right to counsel by not helping her reach a lawyer after she was asked to submit to the test. The record reveals instead that the officers' effort to assist the extremely intoxicated Hartneck was exemplary. We affirm.

## FACTS

A caller told Plymouth police that a woman had pulled her pickup truck to the side of the roadway at Ham Lake Road and Highway 55 and was lying beside her truck in the ditch. By the time Officer Joe Gebhardt arrived, the dispatcher informed him that the woman had gotten back into the truck and driven away westbound. Officer Gebhardt caught up to the pickup in Medina still on Highway 55. He saw it swerving within its lane and driving on the center line. He pulled the truck over and met the driver, Elizabeth Hartneck.

The officer quickly perceived that Hartneck was barely coherent. She made no eye contact with him, did not directly answer his questions, and was wearing no pants. When he asked for her driver's license, Hartneck handed him a credit card. He asked again, and she handed him a piece of paper. She finally produced a clipped license.

Hennepin County Deputy Sheriff Sheri Bukkila arrived to assist, as did Medina Police Officer Thomas Gregory. Deputy Bukkila covered Hartneck's partially naked body

2

with a blanket and helped her out of her pickup. The deputy noticed that Hartneck smelled of an alcoholic beverage. Officer Gregory arrested Hartneck for suspected drunk driving and asked Deputy Bukkila to take her to the Medina police station.

Officer Gregory sat Hartneck on a bench at the station, but he warned that she must stay seated or he would handcuff her. The officer administered field sobriety tests. Hartneck could not follow his instructions for the horizontal gaze nystagmus test. He asked her to recite the alphabet starting at B and ending at Y. Hartneck offered only a few letters before she began mumbling.

A female officer helped Hartneck to use the bathroom, and after Hartneck returned to the testing room, she tried to leave through a closed door. The officers redirected her to her seat. Hartneck would not remain seated, however, repeatedly standing up and being told to sit back down.

Officer Gregory asked if Hartneck would take a breath test, and Hartneck asked to speak to an attorney. Officer Gregory gave Hartneck several telephone directories and her cellular telephone. Hartneck began looking through a phonebook and apparently through the contacts on her phone, but she said she needed reading glasses. Hartneck stood again (this was the thirteenth time) and an officer told her to sit down. She demanded glasses and stood up, reaching over the desk and insisting that Officer Gregory was keeping glasses in the drawer. Officer Gregory handcuffed Hartneck to the bench.

Officer Gregory told Hartneck that he would open phonebooks and she could look for an attorney, whose number the officer would dial for her. He asked if she had any particular attorney in mind. Hartneck offered a name. He attempted to work with Hartneck

3

to find the attorney's number in her phone. He questioned her about the attorney's last name and location. The officers found the attorney's number and dialed it at Hartneck's request.

Officer Gregory asked if Hartneck wanted to keep the phone on speaker or to hold the phone on her shoulder. Hartneck said she didn't know. The phone remained on speaker and reached the attorney's voicemail. Hartneck would not leave a coherent message, so Officer Gregory left a message for her, stating that Hartneck was in custody for drunk driving, that she was looking for advice, and that the attorney should call the police station for Hartneck. Officer Gregory asked if Hartneck would like to call anyone else or wait to see if the attorney would call back. Hartneck said she wanted to wait.

A few minutes passed and Hartneck asked to see the phonebooks again. Officer Gregory presented the directories and asked which one she wanted. Hartneck said she wanted to call the same attorney again, and the officer dialed the attorney's office, reaching an office directory. The officer dialed the attorney's cellular number and again reached voicemail. When the message toned, Hartneck said only, "Please call me back." The officer finished Hartneck's message for her, restating the police station's phone number and explaining that Hartneck was trying to reach the attorney for advice.

After 42 minutes trying to help Hartneck reach an attorney, Officer Gregory ended the effort and asked Hartneck to consent to a breath test. She did, providing a breath sample that was triple the per se limit of intoxication with an alcohol concentration of 0.24.

The state charged Hartneck with first-degree driving while impaired. She moved to suppress the test results, arguing that her right to counsel was not vindicated. The district

4

court denied her motion. Hartneck and the state submitted the case to the district court on stipulated facts, and the district court found her guilty.

Hartneck appeals.

## D E C I S I O N

The only question presented in Hartneck's appeal is whether the officers vindicated her right to counsel after asking her to submit to a breath test. She had only a limited right to counsel afforded under the Minnesota Constitution. *See Friedman v. Comm'r of Pub. Safety*, 473 N.W.2d 828, 833 (Minn. 1991). Because the facts here are not substantially disputed, we answer the question de novo based on the totality of the circumstances. *Mell v. Comm'r of Pub. Safety*, 757 N.W.2d 702, 712 (Minn. App. 2008). We look both to the officer's duties in vindicating the right to counsel and the arrested driver's diligence in exercising the right. *Kuhn v. Comm'r of Pub. Safety*, 488 N.W.2d 838, 842 (Minn. App. 1992), *review denied* (Minn. Oct. 20, 1992).

Hartneck asserts that it was unreasonable for the officers to cuff her hands to the bench, which effectively prevented her from physically paging through the phonebooks. Except in extraordinary circumstances, a driver should be allowed to personally use the phone when attempting to reach an attorney. *Mulvaney v. Comm'r of Pub. Safety*, 509 N.W.2d 179, 181 (Minn. App. 1993). These were extraordinary circumstances. Hartneck was obviously extremely impaired. And she was not verbally controllable. Officer Gregory told Hartneck to remain seated and warned that she would be handcuffed if she stood, and then he patiently waited until after she had stood 14 times and tried to access the contents of his desk before he finally cuffed her to the chair. Hartneck argues that less restrictive

5

means should have been used, either cuffing only one hand or having the officers physically keep her in the seat. But our decision does not turn on whether the officers might have chosen some other means to keep Hartneck seated but on whether they sufficiently vindicated her right to counsel. Handcuffed or not, Hartneck was given plenty of help to reach a lawyer. We add that not only is neither of Hartneck's suggestions constitutionally required, neither seems especially prudent. Cuffing only one hand would not likely prevent a noncompliant arrestee from standing, and using physical force would require ongoing personal contact between the arrestee and officers, escalating the tension and risking injury.

We are satisfied that the officers made substantial efforts to vindicate Hartneck's right to counsel. They attempted to overcome each apparent obstacle to Hartneck's opportunity to reach an attorney. They even left two messages to allay Hartneck's incoherence. The officers did not act unconstitutionally.

**Affirmed.**

6